**STATE of Missouri**

v.

**Charles Cletus HAMPTON.**

No. 43619.

Supreme Court of Missouri.

En Banc.

Jan. 10, 1955.

Rehearing Denied Feb. 14, 1955.

Cecil Block, Donald S. Siegel, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Richard R. Nacy, Jr., Grover C. Huston, Asst. Attys. Gen., for respondent.

PER CURIAM.

Defendant was convicted of burglary in the second degree and sentenced to two years' imprisonment in the State Penitentiary. He appealed to this court. Defendant in his brief contends the evidence was insufficient to sustain a conviction and that the trial court erred in the admission of evidence. The case was submitted in Division I of this court at the January, 1954 term. Thereafter, the case was transferred to the court en banc. All of the following opinion, which we are adopting without quotation marks, with the exception of the last two paragraphs was prepared by Commissioner Coil in Division I.

■ The evidence tending to prove the agency of defendant was entirely circumstantial. In determining whether such evidence was sufficient, we consider as true the evidence tending to support the judgment and the favorable inferences reasonably deducible from such evidence. State v. Murphy, 356 Mo. 110, 112, 201 S.W.2d 280, 282[3, 4]. The evidence so stated tended to prove these facts.

Thirty dollars and six quarts of whiskey were taken from a tavern which was broken into between 1 and 8 a. m. on May 21, 1952. Part of the $30 was a five-dollar roll of dimes wrapped in green paper. The six quarts of whiskey had been removed from a cabinet forming a part of the back bar. When the tavern was opened at 8 a. m., two quarts of whiskey were found on the floor behind the front bar and close to the cabinet from which the six bottles had been removed. Defendant's "left middle" fingerprint was on one of the two bottles. This was the only identifiable fingerprint appearing on either bottle, but there were other blurred fingerprints on both. Defendant lived close to the tavern and frequented it.

The state failed to show the prior history or prior location in the tavern of the "fingerprint" bottle. That is to say, it was not developed where this bottle was when the tavern was closed at 1 a. m., when the bottle had been received at the tavern, or where it had been in the tavern since its receipt. Fingerprint experts testified that a fingerprint would remain on a glass bottle under some circumstances for a period of from several days to three or four months. In explanation of his fingerprint having been found on the bottle (if the print was his print), defendant testified in effect that he must have put it there at some time when he was behind the bar assisting the bartender or waiting on himself.

Mike Staziak, who regularly operated the tavern for his wife, Wanda, the owner, said that defendant was not permitted behind the bar and did not go behind the bar to his knowledge; that he worked most of the time but that there had been another bartender who relieved him for short periods of time. This person did not testify. It was while this other bartender was on duty, defendant said, that he usually went behind the bar.

In the afternoon of the day of the burglary, defendant, along with others, was arrested. A search of his person disclosed a five-dollar roll of dimes wrapped in the same kind of green paper as that on the dimes which had been taken from the tavern. This wrapper was like those normally used by banks to wrap dimes.

■ In criminal cases where the evidence is entirely circumstantial, the circumstances relied upon must be consistent with each other and with a reasonable hypothesis of defendant's guilt, inconsistent with any reasonable hypothesis of his innocence, and inconsistent with every other reasonable hypothesis except that of guilt. State v. Murphy, supra, 201 S.W.2d 282[2]. The question is whether the related circumstances met the requirements of that rule.

■ In our view, while the fact that a five-dollar roll of dimes, wrapped in the same colored paper as the missing roll, was the same day found in the possession of defendant was a circumstance admissible in evidence; nevertheless, inasmuch as there was no evidence sufficiently identifying the roll of dimes defendant had as that taken from the tavern, this circumstance was not substantial evidence inconsistent with a reasonable hypothesis of defendant's innocence.

Now the fact that the fingerprint found on the bottle was defendant's was proved by direct evidence, the weight of which was for the jury. The matter with which we are concerned and the decisive question is whether the circumstance that defendant's fingerprint was on the bottle was alone sufficient substantial evidence to sustain the conviction. The answer, we think, depends upon whether, under the evidence, the fingerprint could only have been impressed at the time of the burglary. 20 Am.Jur., Evidence, § 1223, p. 1077; Wharton's Criminal Evidence, 11th Ed., Vol. 2, § 933, p. 1627; Annotation, 28 A.L.R.2d 1115, 1154, § 29. The state's case-in-chief did not exclude a reasonable hypothesis that defendant's fingerprint was not impressed at the time of the burglary. This, because, as noted, there was no showing as to the prior location and handling of the bottle on which there was a fingerprint. The fact, alone, that defendant's fingerprint found on a bottle of whiskey in a tavern frequented by him would not constitute substantial evidence of his guilt because it does not exclude a reasonable hypothesis of his innocence. But defendant himself testified, in effect, that, if it was his fingerprint, the only way it could have gotten on the bottle was when he was behind the bar at some time prior to the burglary. In other words, the defendant's testimony located the bottle prior to the burglary, in so far as defendant was concerned, sufficiently to support the conclusion that the bottle had not been at a place in the tavern where defendant's fingerprint would have been impressed upon it unless he had been behind the bar. See State v. Richetti, 342 Mo. 1015, 1037, 119 S.W.2d 330, 341[12, 13].

■ We do not weigh the evidence or judge the credibility of witnesses. Those matters were for the jury. The jury could believe or disbelieve defendant's testimony that he had been behind the bar and had handled bottles. The jury could refuse to believe defendant's testimony that he had been behind the bar prior to the burglary, and, if so, the only reasonable hypothesis supportable by the directly proved fact that his fingerprint was on the bottle was that defendant was present at the time of the burglary and must, at least, have been a participant therein. We think the evidence was sufficient to show that defendant's fingerprint had to have been impressed on the bottle at the time of the burglary and that there was therefore sufficient proof to identify defendant as the guilty person to the exclusion of every other reasonable hypothesis. Cf. State v. Johnson, 351 Mo. 785, 788 [2], 174 S.W.2d 139, 140[3].

■■ State's Exhibit B was a card containing defendant's fingerprints taken by a qualified member of the police department on May 24, 1952 (three days after defendant's arrest on the instant charges). So far as the record shows, defendant made no objection to the taking of his fingerprints. See State v. Carenza, 357 Mo. 1172, 1175 [1], 212 S.W.2d 743, 744[1]. The officer who took the fingerprints identified the exhibit as the record of defendant's fingerprints which he had taken. Defendant contends that the exhibit was hearsay and was not shown to have been within the exception of the Uniform Business Records as Evidence Law, Sections 490.660–490.690 RSMo 1949, V.A.M.S. There is no merit in this contention for the reason that the exhibit, having been identified by the person who made it, was not hearsay. The purpose of The Uniform Business Records as Evidence Law is to make admissible records or other entries which, without the Law, would be hearsay and inadmissible.

■ Defendant makes the same contentions as to state's Exhibits D, E, and F, which were, respectively: a fingerprint card found in the files of the identification bureau of the police department which purportedly showed defendant's fingerprints taken on April 4, 1950; a photograph of the left middle fingerprint appearing on Exhibit D; and a photograph showing Exhibit E and the print found on the bottle side by side. Defendant has not preserved his contentions as to Exhibits E and F for review. 42 V.A.M.S. Supreme Court Rule 27.20(a). The reasons assigned in defendant's motion for new trial as claimed errors in the admission of Exhibits E and F did not include the grounds now urged in his brief. Reasons urged in a brief not assigned in a motion for new trial are of no avail. State v. Davis, Mo.Sup., 251 S.W.2d 610, 616 [5, 7].

■ Defendant, relying upon the general rule that the state may not initially attack a defendant's character, contends that the "trial court erred in admitting in evidence over defendant's motion for a mistrial and defendant's further objections testimony concerning State's Exhibit D for the reason that such testimony initially placed plaintiff's character in evidence [issue?] and was harmful and erroneously prejudicial."

As pertinent to this contention, we quote portions of the direct examination of a police officer who testified as a fingerprint expert.

"Q. Now, after you photographed this print (the latent print on the bottle) did you make any examinations to compare that print with known prints? A. Yes, sir, I did. (A paper card was marked State's Exhibit D.)

"Q. After you photographed that you said that you made a check of other files; is that right? A. Yes, sir. I made a comparison of three different fingerprint cards.

"Q. And did you find one of these prints to match? A. Yes, sir, I did.

"Q. And what name appeared on that card that matched the fingerprint that you had taken from the bottle of whiskey that you found in the tavern?

A. The fingerprint that I matched with the latent print was in our files under the name of Charles Hampton.

"Mr. Block (defendant's counsel): I ask for a mistrial, your Honor, please —that officer's statement concerning the fingerprint on file. The Court: Motion overruled. Mr. Block: Sir? The Court: Motion overruled. (A picture was marked State's Exhibit E.)

"(Out of the hearing of the jury.) Mr. Block: I would like to lay the basis of my objection. I want the record to show that I am objecting for the reason the statement is incompetent, immaterial, and prejudicial; that they are attempting to place the defendant's character and reputation in issue at this time, for the reason it would be considered a reflection on the defendant; the officer testifying at this time that defendant's fingerprints were contained in a police file of a prior date—prior to the time of his arrest. The Court: Overruled."

(Defendant renewed his objections and requests for a mistrial at times thereafter when testimony concerning or the further use of Exhibit D was involved.)

The witness testified further that the print of the "left middle finger," appearing on Exhibit D, was reproduced as part of state's Exhibit F, the other part of Exhibit F being a photograph of the latent fingerprint found on the bottle. Exhibit F was in turn placed in a visual cast projector which projected the two fingerprints on a screen. Defendant's counsel, in renewing his request for a mistrial, pointed out that the picture of the two fingerprints shown on the screen disclosed in addition the following notations: "Left finger taken April 4, 1950," and "Latent fingerprint taken May 21, 1952."

At the conclusion of the state's case, Exhibit D in its entirety was for the first time offered in evidence, and the following occurred:

"Mr. Block: We renew our objection to Exhibit D for the reason it is based on hearsay and tends to put defendant's character and reputation before the jury. Surely if that issue was placed before the jury—and for that reason it tends to prejudice in the minds of the jury. * * * The Court: * * * So, now, 'D'—I am not going to let 'D' go in. That is, I am not going to let it go in the way it is, because there is some reference to 1950, when it was taken. That is not the date when he was under arrest. * · * * so, I am not going to let 'D' be passed to the jury, * * *. I permit it to stand as introduced here, and in view of the photo picture that it shows pictures on the other side and with reference to criminal history I am not going to permit that one to be passed around to the jury. 'F' will take the place. * * * With reference to 'F' I think I have protected the rights of the defendant by excluding 'D' from which the photo 'F' was taken. In 'D' it shows the circumstances under which the picture was taken; and because of the fact it shows he was arrested for investigation up there, I am excluding 'D.' "

Thus, it appears that the knowledge which the jury received from the testimony pertaining to Exhibit D and from viewing the portion of Exhibit D projected onto the screen was this: Exhibit D was a card from the police department files on which appeared defendant's name and on which were defendant's fingerprints taken on April 4, 1950, two years prior to his arrest on instant charges.

 Granting for the sake of argument only that the admission of the evidence concerning defendant's fingerprints taken on April 4, 1950, was error, we hold it was harmless. Defendant testified that he had previously been convicted of an offense and had been at police headquarters for investigation. It is common knowledge that fingerprints are taken in cases where

a defendant has been convicted or taken in custody for investigation. It is apparent that the State's evidence as to fingerprints taken in the year 1950 was cumulative and not prejudicial. State v. Hinojosa, Mo., 242 S.W.2d 1, loc. cit. 8 [15]; State v. Bright, Mo., 269 S.W.2d 615, loc. cit. 623 [10].

It follows that the judgment must be affirmed. It is so ordered.