STATE of Missouri, Plaintiff-Respondent,

v.

Leonard W. SLOAN,
Defendant-Appellant.

No. 37595.

Missouri Court of Appeals,
St. Louis District,
Division One.

March 8, 1977.

Allen I. Harris, Clayton, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, William F. Arnet, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., St. Louis, for plaintiff-respondent.

PER CURIAM.

This is an appeal by defendant-appellant, Leonard W. Sloan, from a judgment of conviction entered by the circuit court of the City of St. Louis on October 24, 1975, by which the appellant was sentenced to two years in the department of corrections for the offense of burglary, second degree. § 560.070, RSMo. The appellant was found guilty by the jury. The state having pleaded and proved a prior conviction, appellant was sentenced by the court under the Second Offender Act, § 556.280, RSMo.

A jury could reasonably find the following facts. Mr. James Bedrosian owned certain real property located at 3862 Olive Street in the City of St. Louis. He had owned the property since 1964. The building is located on the southeast corner of Vandeventer and Olive Streets in the city. He used the building as a "warehouse." He kept lumber, paneling, paint, "plumbing stuff" and general storage therein. A few days before January 25, 1974, he closed up the premises and secured the front door. Included in the property stored therein was a sink and two copper refrigerator coils. These items were in his warehouse on January 21, 1974.

On January 25, 1974, Ms. Wanda Reeder, who lived a few doors from the warehouse at 3848 Olive Street, was at home watching television. Shortly after 3:00 p. m. Ms. Reeder intended to move her automobile which was parked on Olive Street because "[y]ou have to move it before four o'clock; they have a traffic thing that you have to move it." Shortly after 3:00 p. m., while in her house, she heard an "unusual noise"—

she heard some glass breaking. The sound came "from the left of me"—towards the intersection of Olive and Vandeventer. When she heard the sound, she went downstairs and walked to the corner and saw that the "door, [of the warehouse] the bottom half of the door in the corner was broken." She also saw a truck in which were "two gentlemen" and one "gentlemen [was] getting in the truck." The pick-up truck which was parked on Vandeventer "drove away" and went "[d]own Vandeventer towards Washington." She noticed the license plate on the truck and wrote the number down when she returned to her home. When she returned to her home, she called the police and Mr. Bedrosian and then went back downstairs to move her car. When she did so, one of her neighbors "yelled at me and told me to look down towards the corner."[1] When she looked, the same truck which she had seen before was parked on Olive Street. One man (the appellant) was sitting in the truck and two men were "coming up the street carrying a sink." Refrigerator coils were already in the pick-up truck at that time. She walked to the corner near the truck and "yelled" at two detectives to "come over." The detectives were on Olive Street, at the curb, "stopped at the light." Ms. Reeder remained on the scene. After the police arrived, she walked to the corner and there she saw a tire tool "propped up against a square thing that holds up the corner of the building." When she went to the corner the second time, the refrigerator coils were in the pick-up truck and "the two gentlemen were carrying the sink and put it in the truck." The appellant, Mr. Sloan, was sitting in the truck, and two other persons—Wiley Shields and Roy Waites—were carrying the sink. She did not see where they had gotten it from but "they were walking down the sidewalk with it and put it in the back of the truck." She found broken glass in front of the door. The men, however, were neither cut nor bleeding.

When Ms. Reeder was at the intersection of Vandeventer and Olive Streets the second time, she hailed two detectives— William Pietrowski and Frank Ellis. They were working the 8:00 a. m. to 4:00 p. m. shift. Shortly after three o'clock on January 25, 1974, the officers were in the area working on another case when they saw a lady standing on the southeast corner of Vandeventer and Olive. She was calling "'police officer, police officer, over here.'" They "got out" of their vehicle and talked to the lady. As a result of the conversation, they detained the three men, one of whom was the appellant, Mr. Sloan. Detective Pietrowski "[s]poke with the lady, . . . and informed the gentlemen what the lady had said and asked them to stay in the area, [and] that a uniformed policeman would come to make a full investigation." At the scene, Detective Pietrowski saw "cooler coils," a "sink" and a "broken window." Officer Pietrowski saw the appellant, Sloan, in the driver's side of the blue Ford pick-up truck. "He [appellant] got out a couple of times" and inquired "what was the matter—why was he being detained there." The pick-up truck was parked about "twenty-five to thirty feet" from the building. While Sloan was in the truck, the other two men were on the sidewalk. Officer Pietrowski examined the glass door which contained several decals and which had a wooden frame about eighteen inches from the ground. The window, three and a half to four feet from the ground, was broken. Other officers eventually came onto the scene and the detectives left.

As stated, Ms. Reeder called the owner of the property, Mr. James Bedrosian. When he received the telephone call he came to the building. When he arrived he saw the "front window broken and two detectives and a truck with a sink and two refrigerator coils and three suspects."[2] He did not know the suspects and never gave them

---

1. A neighbor who lived upstairs—Mrs. Kaiser —"yelled" at her to "look at the corner and see what was going on." Ms. Reeder responded yes, she knew it.

2. He saw the sink and the two refrigerator coils "[o]n the back of a pick-up truck."

permission to go into the warehouse. When he arrived the front door was closed. He testified at trial that the sink and the two coils were in his warehouse on January 21, 1974, "about seven or eight feet from the front door." He knew Wanda Reeder. On cross-examination he testified that he inspected the coils and sink while at the scene. When asked "What identifying marks did the sink have on it?", he replied, "I know the sink; I pulled it out of a lavatory."

Then the following occurred:

"Q. [By defense attorney]: What identifying marks did it have?

"A. I can't say; the sink was missing out of the place and the coils came out of a beer box—that is all I know. As far as some identification, I can't see there is any mark on them, you know.

"Q. Well you can't see any identifying mark on this sink that shows it was your sink?

"A. No.

"Q. What makes these beer cooler coils any different than any other beer cooler coils?

"A. They are about the same.

"Q. How do you know they were your coils?

"A. Because they were missing out of my establishment.

"Q. You had some missing beer coils and a missing sink. Is there any way at all you can say that sink and beer coils were in fact the same beer coils and same sink that were in your place?

"A. I didn't see the men carry them out, but they were gone out of the place.

"Q. That is not my question. Was there anything—did you have your name attached, a broken chip that you recognized?

"A. No, sir."

On redirect examination, Mr. Bedrosian testified that the appellant offered him some money if he would not prosecute.

On February 15, 1974, an information was filed charging the appellant, Mr. Shields and Mr. Waites with burglary in the second degree. On June 30, 1975, the information was amended to charge a prior conviction. Trial was held beginning on June 30, 1975, at which the above evidence was adduced.

At trial the appellant, Mr. Sloan, testified on his own behalf. He testified that he worked for a cab company and on January 25, 1974, went to the Carioca Lounge where he met Shields and Waites. While there he had "[q]uite a few" drinks. While there a man—"I really don't know the man"—told him about a job "[t]o move some stuff for him" and offered the three of them ten dollars to do a job for him. The "stuff" was at Vandeventer and Olive. The man had a green Volkswagen. They arrived at Vandeventer and Olive but did not see the Volkswagen. When appellant parked, he saw Ms. Reeder coming down the street ". . . and she started screaming. I thought somebody was jumping on her. I jumped out of the truck to help her and the police were there. I said 'what's going on?' This lady—I found out later after I was locked up—Helen Kaiser, said that man never did anything. They told me to get back in my truck. I got back in my truck. They stayed out there talking and I got out and said 'what's going on?' They said to get back in the truck—you never had nothing to do with it—but they still locked me up."

The appellant denied breaking any window and denied that the sink and coils were ever in his truck.

Both sides rested, instructions were given including the burglary and circumstantial evidence instruction (MAI–Cr 3.42), arguments were made and the jury found the appellant guilty of burglary in the second degree. After overruling the motion for new trial, the court granted allocution and sentenced the appellant to a minimum sentence of two years in the department of corrections.

Appellant appeals. On this appeal he contends that the court erred

". . . in failing to dismiss this case on the grounds that the victim [Mr. Bedrosian] was unable to identify any property which might have been involved . . . as being his, therefore, negating the element in a burglary case that the breaking and entering must be with the intent to 'steal' or commit a felony."

The thrust of appellant's contention on this appeal, as we understand it, is that, since the victim, Mr. Bedrosian, was unable to identify the sink and coils as belonging to him, there was no showing that the breaking and entering of the warehouse was with intent to steal or commit a felony therein, an essential element of the offense, hence the trial court erred in denying the appellant's motion for judgment of acquittal at the close of the evidence. Appellant also argues that the evidence produced was entirely circumstantial and that, since the property of Mr. Bedrosian was not properly identified, the lack of identification is not substantial evidence inconsistent with defendant's innocence. Or, to phrase it another way, since there was no identification of the property by Mr. Bedrosian that his property was stolen, there was no intent on the part of the appellant to steal, hence an essential element of burglary was absent so that the court erred in denying the appellant's motion for judgment of acquittal.

■ In determining whether the trial court erred in failing to sustain his motion for judgment of acquittal, or in the words of the appellant—failed to dismiss this case, we consider as true all the evidence favorable to the state and the favorable inferences to be drawn therefrom and reject evidence to the contrary. Our function is not to substitute our judgment for that of the jury, but we determine only whether the evidence, considered in the light most favorable to the state and disregarding evidence to the contrary, is sufficient to make a submissible case. If so, the finding of the jury should not be disturbed on appeal. *State v. Cain*, 507 S.W.2d 437, 438 (Mo.App. 1974).

■ Not only must we view the evidence in a light favorable to the state but we are governed by other principles of law which may be briefly stated: (1) all persons who participate in an offense are equally at fault; (2) presence of an accused at the commission of an offense is evidence to be considered but to sustain a conviction something more must be shown. It is necessary that the accused associate himself with the venture in some manner. Any evidence showing any form of participation is sufficient to support the conviction by the jury. The evidence to show participation may be circumstantial. But, in order to warrant a conviction based on circumstantial evidence, the facts and circumstances must be consistent with each other, be consistent with the hypothesis of the guilt of the accused, be inconsistent with innocence and point to guilt so as to exclude every reasonable hypothesis of innocence. *State v. Cox*, 527 S.W.2d 448, 452 (Mo.App.1975); *State v. Burks*, 521 S.W.2d 11, 14–15 (Mo.App.1975).

■ The elements of the offense of burglary in the second degree are well established. They are the breaking and entering with the intent to steal or to commit a felony. § 560.070, RSMo.; *State v. Little*, 501 S.W.2d 562, 563 (Mo.App.1973); *State v. Cox*, supra, 527 S.W.2d at 452. In *State v. Parks*, 336 S.W.2d 369, 370 (Mo.1960), our Supreme Court held that in order to sustain a conviction for burglary, the statute, § 560.070, merely requires evidence of a forcible breaking and entering into a building in which goods, wares and merchandise were kept under circumstances which would warrant an inference of an intent to steal.

■ While intent is an essential element of second degree burglary and must be established beyond a reasonable doubt, *State v. Watson*, 383 S.W.2d 753, 756 (Mo. 1964), overruled on other grounds in *State v. Ellifrits*, 459 S.W.2d 293 (Mo. banc 1970), the requisite intent to steal may be proved from the circumstances in the case and may be established by circumstantial evidence. *State v. Fritz*, 379 S.W.2d 589, 590 (Mo. 1964); *State v. Smith*, 357 S.W.2d 120, 123 (Mo.1962); *State v. Shipman*, 354 Mo. 265, 189 S.W.2d 273, 275 (1945); *State v. Cox*,

*supra,* 527 S.W.2d at 453; *State v. McBride,* 366 S.W.2d 374, 377 (Mo.1963). See 13 Am. Jur.2d, Burglary, § 52, pp. 352–353 (1964). Circumstantial evidence is relevant and material to prove the requisite intent. The element of intent can rarely be shown by direct evidence hence may be shown by the reasonable inferences arising from the circumstances surrounding the act. *State v. Ahern,* 546 S.W.2d 20 (Mo.App.1976); *State v. Massey,* 542 S.W.2d 88 (Mo. App.1976). Intent may be inferred. *State v. Everett,* 448 S.W.2d 873, 877 (Mo. 1970). An inference of guilt is permissible from the unexplained possession of personal property recently stolen in a burglary, *State v. Grey,* 525 S.W.2d 367, 369 (Mo. App.1975), *State v. Mesmer,* 501 S.W.2d 192, 195 (Mo.App.1973), and the inference exists both as to the offense of burglary and of stealing, *State v. Vineyard,* 497 S.W.2d 821, 830 (Mo.App.1973). Proof of actual manual possession by the defendant of recently stolen property is not necessary to raise the inference and the possession by the defendant need not be separate and apart from all others. *State v. Vineyard,* supra, 497 S.W.2d at 830 and cases cited therein.

 Appellant complains that the victim, Mr. Bedrosian, did not sufficiently identify the sink and the coils as being owned by him so that there was an insufficient showing that his property was stolen from the warehouse thus negating any intent on the part of the appellant to steal. In cases of burglary and stealing, the general principle is that the state must identify the stolen property found in the possession of the accused by the most direct testimony of which the case is susceptible. See discussion in 50 Am.Jur.2d, Larceny, § 142, p. 321 (1970). But the law does not impose impossible standards. The identification of property which does not bear identifying marks is seldom capable of strict proof. *Tatum v. United States,* 88 A.2d 495 (Mun.Ct.App. Dist.Col.1952). The question of identifica-

tion is normally one for the jury. 50 Am. Jur.2d, Larceny, § 158, p. 342 and § 171[3], p. 359 (1970); *State v. Chase,* 444 S.W.2d 398, 402 (Mo. banc 1969). The fact of identification of the property stolen may be proved by circumstantial evidence. *State v. Chase,* supra, 444 S.W.2d at 402.

 Tested within all these legal principles, we hold that the trial court did not err in overruling the motion for judgment of acquittal. There was sufficient, substantial circumstantial evidence produced by the state to show (1) the identification of the sink and coils by the victim, Mr. Bedrosian, (2) that the property was stolen from his building, and (3) that there was an intent on the part of the accused to steal. Thus the elements of the offense of burglary were shown.

The evidence shows that Ms. Reeder heard an unusual noise—she heard some glass breaking—and saw a tire tool near the building; the glass on the front door was broken; she saw the license plate on the defendant's truck parked near the warehouse; when she returned to the building the second time the appellant was sitting in the truck and the two companions were coming up the street carrying the sink and put it in the appellant's truck. The coils were already in the back of the truck. ". . . [T]hey were walking down the sidewalk with it [the sink] and put it in the back of the truck." Mr. Bedrosian saw the sink and coils in the truck. While he could not positively identify the sink and coils, his identification was sufficient to submit to the jury the question of ownership. That issue was for the jury. He testified, "I know the sink; I pulled it out of a lavatory." While he could not testify as to any identifying marks on the property, he did testify that they were about the same and that he knew they were his coils because "they were missing out of my establishment." He testified that a sink and coils were in his warehouse a few days before "about seven or eight feet from the front

3. ". . . [W]hat evidence constitutes an identification of the property found in the possession of the accused as that of the alleged

owner is a matter for the jury in the ordinary case."

door." The property was found in the defendant's truck which was parked 10–15 feet away from the warehouse. The property was in his possession. The victim testified that the appellant offered money not to prosecute.

Under all these circumstances and under the legal principles stated, we cannot conclude that there was insufficient evidence to submit to the jury the issues of breaking and entering, identification of the property, and an intent to steal. The totality of the facts and circumstances are such so as to exclude every reasonable hypothesis of innocence.

In his brief appellant relies upon *State v. Hampton*, 275 S.W.2d 356 (Mo. banc 1955). In *Hampton*, money and six quarts of whiskey were taken from a tavern which was broken into. Part of the money ($30.00) was a five-dollar roll of dimes wrapped in green paper. Defendant's fingerprints were on one of the bottles. When the defendant was arrested, a search of his person disclosed a five-dollar roll of dimes wrapped in the same kind of green paper as that on the dimes which had been taken from the tavern. The wrapper was like those normally used by banks to wrap dimes. The court concluded that the possession of a roll of dimes was a circumstance admissible in evidence, nevertheless this circumstance was not substantial evidence inconsistent with a reasonable hypothesis of defendant's innocence, since ". . . there was no evidence sufficiently identifying the roll of dimes defendant had as that taken from the tavern . . ." and found in the possession of the accused. However, the court affirmed the judgment of conviction because of the fingerprints.

*State v. Hampton*, supra, is clearly distinguishable from the facts and circumstances here. A roll of dimes in the possession of a defendant is not substantial evidence inconsistent with a reasonable hypothesis of innocence. But here the sink and coils were sufficiently similar in appearance to the ones in the warehouse and Mr. Bedrosian sufficiently identified the property so as to submit the issue to the jury. The totality of the circumstances is inconsistent with a reasonable hypothesis of defendant's innocence. *State v. Thomas*, 452 S.W.2d 160, 162 (Mo.1970).

The other authorities relied upon by the appellant are not dispositive of the issues presented here.[4]

We conclude, therefore, that the trial court did not err in denying the motion of acquittal because Mr. Bedrosian was "unable to identify" the property so that the element of intent to steal was lacking.

We have read the entire transcript, the briefs of the parties, the authorities relied upon therein and we find no prejudicial error, and hence affirm the judgment of conviction.

The judgment is affirmed.

All the Judges concur.

---

4. *State v. Thompson*, 428 S.W.2d 742 (Mo. 1968)—[no evidence that the defendant was at or near the burglarized premises at time of offense or at any other time; items were items of personal property (gloves, wallet) which were of different description—gloves had different lining];

*State v. Miller*, 433 S.W.2d 281 (Mo.1968)—[receiving stolen property];

*State v. Delay*, 455 S.W.2d 1 (Mo.1970)—[receiving stolen property].