STATE of Missouri, Respondent,

v.

Francis Guy PULIS, Appellant.

No. 10664.

Missouri Court of Appeals,
Southern District,
Division Two.

March 6, 1979.

Motion for Rehearing or Transfer
Denied March 22, 1979.

John D. Ashcroft, Atty. Gen., Robert L. Presson, Asst. Atty. Gen., Jefferson City, for respondent.

Lloyd R. Henley, Springfield, for appellant.

WILLIAM L. RAGLAND, Special Judge.

Defendant appeals from a conviction by a jury of burglary in the second degree and stealing. Under the second offender act, the court assessed his punishment at six years imprisonment on the charge of burglary and three years on the charge of stealing. The sentences are to run consecutively. We affirm.

A building in Springfield, Missouri, occupied by John F. Connelly Plumbing and Heating, Inc., was burglarized on the evening of August 31, 1976 or the early morning of September 1, 1976. Entry was gained by breaking and raising a window. Upon inspection of the premises, a quantity of copper tubing was discovered to be missing. On September 2, 1976, defendant, accompanied by one or more persons, sold three hundred forty pounds of copper tubing later identified as the property stolen, to Karchmer Iron and Metal Company, receiving in return $190.40. Defendant did not dispute the transaction at Karchmer's, but maintained that he sold the property as an accommodation to one Mac Asbell, who allegedly found the copper tubing while walking along some railroad tracks. Defendant also claimed to be at his father's house during the entire time in question. This testimony was corroborated by defendant's father and Asbell.

Defendant first challenges the sufficiency of the information. He complains that it failed to describe the property stolen with sufficient specificity. The goods allegedly stolen were set out as "the above-described personal property," the reference being to the burglary portion of the information which specified a "building in which divers goods and other valuable things were then and there kept and deposited, and copper tubing, . . ."

In determining the sufficiency of an information, constitutional and statutory requirements must be satisfied. The defendant in a criminal case has a right to demand the nature and cause of the accusation and the information must be sufficiently definite to enable him to prepare his defense. *State v. Tandy,* 401 S.W.2d 409 (Mo.1966); V.A.M.S.Const. art. 1, § 18(a). In addition, in criminal prosecutions, there must be compliance with Rule 24.01 [V.A. M.R.] which provides that the information must allege essential facts constituting the offense charged. *State v. Frankum,* 425 S.W.2d 183 (Mo.1968). As will be discussed later, the provisions of Rule 24.03 must be also considered when the information lacks details or the particulars. of the offense.

In the information filed in the instant case, the allegations follow the language of the statutes and are therefore sufficient to satisfy constitutional and statutory requirements. *State v. Tandy,* supra. The next issue to be resolved is whether the description of the stolen property was sufficient to comply with the requirement that "essential facts" must be alleged. We conclude in the affirmative.

Defendant relies on *State v. Rose,* 428 S.W.2d 737 (Mo.1968) wherein the court was concerned by the lack of specificity in the amended information. In that case, the property was described in the amended information as "the said goods, wares, and merchandise, personal property of *Raymond Wright.*" In the portion of the information charging burglary there was language indicating that the theft was from a jewelry store. This was the only indication of the nature of the property. While this practice was criticized, no reversal occurred under the circumstances of that case. Here, while it might have been possible to identify the property allegedly stolen in more detail, such as to size, its description as "copper tubing" was sufficient to inform the defendant of the essential facts and was clearly more specific than the charge in *Rose.*

Rule 24.03 provides that when an information alleges essential facts constituting the offenses charged but fails to inform the defendant of the particulars of the offenses, the defendant may file a bill of particulars. Thus, if the information was lacking in details as to the description of the stolen property, defendant should have filed a bill of particulars. *State v. Rose,* supra. The reviewing court must assume that a defendant was sufficiently informed of the details to prepare his defense where the information alleged essential facts constituting the offenses and the defendant did not file a motion for a bill of particulars. *State v. Edmonds,* 347 S.W.2d 158 (Mo. 1961). Failure of an information to·give all desired details may be waived by the defendant's failure to request a bill of particulars. *State v. Frankum,* supra, 425 S.W.2d

at 189; *State v. Kesterson*, 403 S.W.2d 606 (Mo.1966). We therefore find no merit to defendant's first assignment of error.

■ Defendant in his second assignment of error presents two points. Paraphrased, he complains (a) that the metal delivered to the scrap buyer was never sufficiently identified as the stolen copper and (b) that the ownership of the stolen copper was never established in the corporate owner mentioned in the information and instructions. He therefore asserts that there was insufficient evidence for submission of the case to the jury and his motion for judgment of acquittal should have been sustained. Although the evidence received by the jury was similar as to both identification and ownership, we will, as done by defendant in his brief, discuss the sufficiency of such evidence as separate issues. It should be noted here, however, that the standard of review is the same on both points. In testing the sufficiency of the evidence in a criminal prosecution by motion for a judgment of acquittal, facts and evidence and favorable inferences reasonably to be drawn therefrom must be considered in the light favorable to the state and all evidence and inferences to the contrary must be disregarded. *State v. Strong*, 484 S.W.2d 657 (Mo.1972).

With regard to the identification of the copper tubing, (a) defendant argues that the identification was "summary" in that it was "not based on actual recognition, but on mere suspicion." He complains further that there was no testimony about the sizes or other characteristics of the material stolen. As will be noted later, the record in the case does not support such allegations of the defendant. The thrust of defendant's argument is that the identification of the property by the witnesses, standing alone, was insufficient to make a submissible case. With two exceptions, cases cited by defendant, while stating general requirements applicable to sufficiency of identification, are not factually analogous to the case at bar and are of little assistance. *State v. Lease*, 124 S.W.2d 1084 (Mo.1939) states that a case is too frail for submission

to a jury if the goods never are identified clearly as those charged to have been carried away from the complaining witness. The identification of the alleged fruits of larceny must be "by the most direct" testimony of which the case is susceptible. *State v. Sloan*, 548 S.W.2d 633 (Mo.App. 1977).

Defendant relies on, and emphasizes, two cases, *State v. Hampton*, 275 S.W.2d 356 (Mo.banc 1955), and *State v. Thompson*, 428 S.W.2d 742 (Mo.1968), which, while closely in point, may be distinguished from the case at bar. In *Hampton*, the property allegedly stolen consisted of a roll of dimes wrapped in paper "like those normally used by banks to wrap dimes." The court stated, at p. 358:

"In our view, while the fact that a five-dollar roll of dimes, wrapped in the same colored paper as the missing roll, was the same day found in the possession of defendant was a circumstance admissible in evidence; nevertheless, inasmuch as there was *no evidence* sufficiently identifying the roll of dimes defendant had as that taken from the tavern, this circumstance was not substantial evidence inconsistent with a reasonable hypothesis of defendant's innocence." (emphasis ours)

In *Thompson*, the property allegedly stolen consisted of one new brown leather wallet, bearing the name of "Swank"; one new pair of black leather gloves, bearing the legend "made in Japan"; eighteen hundred pennies, and other articles. Identification of the property allegedly stolen was attempted by the owner who testified that the gloves were "exactly like" those taken from his home although he had stated previously that his gloves had a black lining, whereas those found on the defendant had a white lining. He further testified that his gloves and those found on defendant were not, so far as he could tell, different from any other pair of black leather gloves made in Japan. He could not identify the wallet as being his or "exactly like" his. He stated that he could not identify the [ninety-four] pennies on defendant's person.

The court found that the identification was insufficient. The court observed that the conviction could not be upheld merely because defendant happened to have in his possession gloves "exactly like" those stolen, "exactly like" many and possibly hundreds of others. Thus, where there is no evidence presented on identification, as in *Hampton,* or where the evidence was not substantial, casting a mere suspicion, as in *Thompson,* it was held that the identification was insufficient. It should be noted that both cases involved property in common and everyday usage.

■ Clearly, the evidence presented in the instant case bears no resemblance to the evidence presented in *Hampton* or *Thompson.* Witness Edwards, president of the corporate occupant of the burglarized building, identified the copper tubing by its size and brand and noted that to his knowledge he was the only one in the area with such tubing. He also identified one sample by the markings of the company that sold it. He concluded that he was "dead certain" the copper was his and if he had any doubts, he "wouldn't be sitting here this afternoon." The witness Edwards identified the property and indicated the reasons for this identification. Since copper tubing is not of common source and use, the usefulness and believability of the witness's identification are greatly increased. The identification of the copper tubing was certainly beyond the minimum demanded for sufficiency. We therefore hold that sufficient evidence was presented to make a submissible case.

■ As stated above, defendant complains (b) that the ownership of the stolen copper was never established. He directs our attention to the fact that witness Edwards, in his testimony, did not specifically state that he was the owner of the stolen goods. His contention in that regard is accurate; however, his conclusion that the record is barren of evidence concerning ownership, as will be demonstrated, is in error. Ownership, like every other element of the offense of stealing, can be proven by circumstantial evidence. *City of Kansas City v. Stoner,* 424 S.W.2d 768 (Mo.App. 1968); *State v. Brewer,* 325 S.W.2d 16 (Mo. 1959); *State v. Loges,* 339 Mo. 862, 98 S.W.2d 564 (1936). Lawful custody and control of property, even though actually owned in the formal or strict sense by another, is in the eyes of the law a sufficient attribute of ownership to support an averment and proof of ownership against one charged with stealing property belonging to another. *State v. Webb,* 400 S.W.2d 84 (Mo.1966); *State v. Hill,* 528 S.W.2d 798 (Mo.App.1975). In prosecutions for larceny, proof of possession is sufficient as to ownership. *State v. Campbell,* 386 S.W.2d 383 (Mo.1965); *State v. Gale,* 322 S.W.2d 852 (Mo.1959); 52A C.J.S. Larceny § 13 b., pp. 437–438.

■ Thus, in the instant case, the testimony indicating that the copper tubing was in use by the company, in their possession, stored on their premises and identified by the president of the corporation constituted sufficient evidence to make a submissible case on the question of ownership. The custody and control over the stolen tubing shown by the evidence was sufficient proof. Additionally, throughout the testimony, witness Edwards referred to his business, his building, his copper and used his invoices in calculating the value of the stolen property. From this testimony his ownership of the stolen property can certainly be inferred.

Defendant cites *State v. Cline,* 452 S.W.2d 190 (Mo.1970) which, in our opinion, supports the position of the state rather than the defendant. In that case, the property allegedly stolen consisted of watches which were identified by the owner by their type and retail value. The evidence was found to be sufficient to show ownership. Defendant also cites *State v. Lackey,* 230 Mo. 707, 714, 132 S.W. 602, 604[4] (1910), for the proposition that a conviction for stealing cannot stand without proving ownership of the property stolen; and *State v. Roswell,* 153 Mo.App. 338, 341, 133 S.W. 99, 100[3] (1910), for the proposition that proof of ownership of a building does not prove ownership of its contents. There is no

quarrel with these authorities; they are simply not in point because the evidence heretofore summarized was amply sufficient to make a submissible case.

Defendant's third assignment of error is that the jury should have been admonished or a mistrial declared when the prosecuting attorney asked a defense witness if he had ever had contact with the police department. The alleged improper questions of the prosecutor occurred during the cross-examination of witness Mac Asbell who testified that he had found the copper tubing near some railroad tracks. The exchange, with the obvious purpose of impeachment, was as follows:

"Q. Have you got a criminal record, Mr. Asbell?
A. No, sir.
Q. None at all?
A. No, sir.
Q. You've had no contact with the Springfield Police Department or the Greene County sheriff's office?"

█ Defendant's prompt objection was then sustained and the exchange ended. The state in its brief admits the last question was improper and we agree. Section 491.050 RSMo 1969, provides that the *conviction* of a criminal offense may be proved to affect the credibility of a witness. Mere arrest or other contact with a law enforcement agency ordinarily will not supply impeachment. *State v. Lockhart,* 507 S.W.2d 395 (Mo.1974). For this reason, authority condemns the prosecutorial practice of asking about being under suspicion, or investigation, or whether officers have visited the witness. *State v. Sanders,* 360 S.W.2d 722 (Mo.1962). The question to be answered here, however, is whether the bounds of the statute were exceeded to an extent sufficient to reverse a judgment of conviction. We conclude in the negative.

The cases relied on by appellant to illustrate prejudicial violations of this statute all involve extended or in-depth cross-examination of a witness, clearly unlike the questioning in this trial. No cases are found which hold that error occurred when questioning was immediately halted by objec-

tion. The primary case relied on by appellant, *State v. Lockhart,* supra, only held that such continued cross-examination would not be permitted. Here, continued cross-examination was not permitted by the trial judge below. The second case cited by appellant, *State v. Sanders,* supra, involved extended questioning over the objections of the attorney. Since such questioning did not occur in the trial below, this decision is not persuasive.

█ Any possible adverse effect upon defendant by the mere asking of the one question was adequately dealt with by instructions given to the jury. The jury was instructed, MAI–CR 2.02, " . . . If the court sustains an objection to a question, you will disregard the entire question and you should not speculate as to what the answer of the witness might have been. . . . "

█ By sustaining the objection and giving this instruction, the trial judge did all that was proper and all that was requested of him. Any further admonitions or declarations by the judge would have been excessive, unnecessary, and clearly unrequired. There was no motion for mistrial, or request for further admonition or cautionary instruction. The appellant should not now be able to claim error, when the only relief he requested at the time was granted. *State v. Cissna,* 510 S.W.2d 780 (Mo.App.1974).

█ Defendant's fourth and final point is that the court erred in overruling his objection to the filing of the amended information because it did not contain the section number of the second offender act, § 556.280 RSMo 1969. He asserts that such action by the trial court violated Rule 24.01 which requires both the designation of the statutes containing the proscribed conduct under which the defendant is charged and the section of the statutes which fixes the penalty or punishment therefor. His argument alludes to the use of the term "fix."

In the instant case, the information alleged the necessary facts to support the

application of the second offender act. When defendant objected to the omission of the section number of the second offender act, the trial court observed:

"That portion of the information bringing into play the second offender act is not a part of the substantive charge against the defendant but would only go to enhance or to alter the procedure for imposing punishment in the event the Court should find the defendant is a second offender, so the Court does not believe that those sections need to be shown on the face of the information."

It is elementary that the second offender act is not an act charging an offense, nor does it fix the penalty or punishment therefor. The act simply operates to take the matter of punishment away from the jury and place it with the judge. The use of the statute is not a substantive charge against defendant, and the court below was correct in its understanding of the meaning and intent of the statute. The only case cited by defendant, *McKann v. Town of Irvington*, 133 N.J.L. 63, 42 A.2d 391 (1945) involves a statutory requirement to fix compensation and is not in point.

The judgment is affirmed.

BILLINGS, C. J., and HOGAN, J., concur.