STATE of Missouri, Respondent,

v.

Andre WRIGHT, Appellant.

No. 61045.

Supreme Court of Missouri,
En Banc.

June 19, 1979.

Lee M. Nation, Kevin R. Locke, Asst. Public Defenders, Kansas City, for appellant.

John D. Ashcroft, Atty. Gen., Brenda Farr Engel, Asst. Atty. Gen., Jefferson City, for respondent.

BARDGETT, Judge.

Defendant-appellant Andre Wright appeals from a judgment of conviction entered by the Circuit Court of Jackson County whereby the appellant, after having been found guilty of robbery first degree (sec. 560.120, RSMo 1969), by a jury, was sentenced to eighteen years' imprisonment. The Missouri Court of Appeals, Western District, affirmed, after which appellant's motion for transfer to this court was granted to examine the question of whether the court of appeals opinion was in conflict with *State v. Nimrod*, 559 S.W.2d 592 (Mo.App. 1977), a companion case, in which an issue on appeal involved the admission of the same evidence, to wit, a wallet of one Wilder, and the prosecutor's jury argument in connection therewith. Art. 5, sec. 10, Mo. Const., as amended 1970; Rule 83.03.

Appellant is the third of three defendants involved in the robbery. The first defendant's trial, conviction, and appeal are reported in *State v. Nimrod, supra.* The second defendant's trial, conviction, and appeal are reported in *State v. Jerome B. Wright*, 571 S.W.2d 734 (Mo.App.1978).

The victim, Gary Jacobs, testified that he was accosted by three assailants on July 13, 1975, who beat him and took his wallet and watch. He identified the appellant as one of the three. A private security guard who had been fortuitously passing testified that he had come to the aid of the victim. He identified the appellant and another assailant by their clothing, and the third by his face. Police officer Michael Vrentas testified that the appellant was wearing a brown tank-top shirt and brown trousers on the night in question. Officer Daniel A. Kroog also testified to that effect. Appellant moved to dismiss on the basis of destroyed evidence and officer John Rearden testified that he had inadvertently destroyed appellant's clothing. Appellant testified on the motion that he had not been dressed as was described but instead had been wearing a checked shirt. The motion to dismiss was overruled.

Officer Vrentas testified that he and officer Kroog had been dispatched to check on suspicious parties riding in a white 1975 Chevrolet Vega. The officers stopped a vehicle answering that description and arrested all four occupants of the automobile, one of whom was the appellant. The officers observed Nimrod placing objects under the vehicle as he stepped from it. The recovered objects were two wallets, one belonging to the victim Jacobs, and one which did not belong to any of the occupants of the automobile. The latter wallet was received in evidence over objection. Although its owner was not affirmatively identified to the jury, the testimony specifically excluded each of the alleged participants and Jacobs as owners.

During the course of appellant's case, his attorney, in chambers, discussed with the court and the prosecuting attorney the fact that the state intended calling Dorothy McKelvey Wright as a rebuttal witness and that Ms. Wright had advised both the appellant's attorney and the prosecuting attorney's office that if she were called to testify regarding her actions on the night in question she intended to avail herself of the Fifth Amendment privilege against self-incrimination. Ms. Wright has invoked the Fifth Amendment in a previous trial on the witness stand in refusing to testify. *State v. Wright, supra.* Appellant objected to the calling of this witness on a number of grounds, among which was that when she refuses to testify on self-incrimination grounds and because she was arrested with the appellant the jury would infer guilt on the part of the appellant. However, the state called her anyway. She did refuse to testify by invoking the Fifth Amendment, the same as she did in *State v. Wright, supra.* The state referred to the second wallet in argument as set forth *infra.*

On appeal the appellant makes three points. He contends, first, that the trial court erred in overruling appellant's objection to the calling of witness Dorothy McKelvy Wright and in failing to strike said testimony as irrelevant, improper rebuttal, and highly prejudicial. Second, he contends that the court erred in overruling appellant's objections to the admission of

the second wallet in that it was evidence of another crime and irrelevant, immaterial, and highly prejudicial. Third, he contends that the court erred in overruling appellant's motion to dismiss or to suppress identification evidence where the state destroyed evidence (certain clothing of appellant) which tended to negate appellant's guilt. He contends the nonproduction of said evidence was in violation of the rule of discovery, denied appellant's right to due process of law, and denied his rights to effectively confront the evidence against him.

## I.

Appellant's second point will be taken up first. Appellant contends that the admission into evidence of the wallet belonging to Wilder was error and he was prejudiced thereby. Although the state was not allowed to refer to the owner of the wallet by name, the state was allowed to show in evidence that it did not belong to any of the occupants in the car or to the victim of this robbery, Mr. Jacobs. Appellant contends the Wilder wallet was evidence of another crime, unrelated to the crime for which appellant was on trial, save for the fact that it was found when appellant was apprehended. The state argued the evidence of the Wilder wallet during the trial and in closing argument.

■ Evidence of other crimes, unrelated to that for which an accused is presently standing trial, violates the defendant's right to be tried only for the offense for which he was indicted and is error. *State v. Nimrod, supra; State v. Shilkett*, 356 Mo. 1081, 204 S.W.2d 920 (1947); *State v. Holbert*, 416 S.W.2d 129 (Mo.1967); *State v. Walker*, 490 S.W.2d 332 (Mo.App.1973). The state contends that, even if admission of the wallet as evidence were error, it was not prejudicial to the appellant because it represented an insignificant part of the state's case in view of the overwhelming nature of the evidence of guilt presented against appellant. The state cites *Nimrod* as controlling. *Nimrod* is controlling on the issue that admission of the second wallet was error, but

*Nimrod* is *not* controlling with regard to the prejudicial nature of that error and is distinguishable from the case at bar. In *Nimrod* the court considered the challenge to the introduction of the Wilder wallet under the plain-error standard of review. Unlike appellant in the present case, the defendant in *Nimrod* failed to preserve the error for appeal. Therefore, it was defendant's task to convince the court that "manifest injustice" resulted. Rule 27.20(c). Respondent concedes that in this case appellant has properly preserved the error for review.

■ Harmless error is not grounds for reversal, *State v. Spica*, 389 S.W.2d 35, 53 (Mo.1965); however, error in the admission of evidence should not be declared harmless unless it is so without question. *State v. DeGraffenreid*, 477 S.W.2d 57 (Mo. banc 1972), citing *State v. Wynne*, 353 Mo. 276, 182 S.W.2d 294, 300 (1944), and *State v. Richards*, 334 Mo. 485, 67 S.W.2d 58, 61 (1933). The *Wynne* court said, "The record does not demonstrate that the defendant was not injured by the error as by showing that the jury disregarded or could not have been influenced by the evidence." Similarly, in the present case, respondent has failed to show that the jury was not influenced by the introduction and argument of the wallet. If the wallet did enter the jury's deliberation, appellant has been denied his right to stand trial only for the crime with which he is charged and to have the jury determine his guilty with reference only to the evidence presented with regard to that crime.

■ Respondent contends the Wilder wallet was a rather innocuous item of evidence and was only a small part of the state's case; that any crime the Wilder wallet "may have implied appellant committed was of much less consequence than the brutal crime the evidence showed the appellant had committed"; the wallet was never passed to the jury and "the two small references to this evidence [Wilder wallet] in the transcript were never reinforced by allowing the jury to view the wallet".

Respondent acknowledges that the admission of the Wilder wallet into evidence was error, *State v. Nimrod, supra,* a companion case to this one so held, and therefore that the burden is upon the respondent-state to show this evidence was harmless error beyond a reasonable doubt.

The Wilder wallet was admitted with the following testimony of officer Kroog:

"Q   All right, sir.   And after you observed this, what if anything did you do towards recovering those objects?

A   I personally recovered them.

Q   You personally recovered them?

A   Yes.

Q   And what were the objects?

A   They were two men's billfolds, leather billfolds.

Q   All right, sir.   I'll hand you what's been marked and received in evidence as State's Exhibit No. 6 and ask if you can identify that.

A   Yes, sir, it's one of the billfolds I found underneath the vehicle.

Q   All right, sir.   Whose identification did that billfold contain?

A   It had the identification belonging to a Mr. Gary Jacobs.

Q   All right, sir.   And did it have any money in it at the time you recovered it?

A   No, sir, it did not.

Q   I'll hand you what's been marked as State's Exhibit No. 7 and ask if you can identify that.

A   Yes, sir.   This was also recovered in the same location as the first wallet.

Q   Now let me ask you, Office Kroog, did that wallet, State's Exhibit No. 7, contain the identification of Edward Nimrod?

A   No, sir.

Q   Did it contain the identification of Jerome Wright?

A   No, sir.

Q   Did it contain the identification of Andre Wright?

A   No, sir.

Q   Did it contain the identification of Dorothy Wright or Dorothy Wright McKelvy?

A   No, sir.

   MR. DAKOPOLOS:   At this time the State would offer in evidence State's Exhibit No. 7, Your Honor."

The appellant objected to exhibit 7 because it had not been shown to be connected to the crime and constituted evidence of a crime for which appellant was not on trial; the objection was overruled.   It is clear the jury saw the wallet and, under the evidence, it is also clear the wallet did not belong to any of the participants to the robbery of Gary Jacobs or to Jacobs.   It is clear from the tenor of the testimony that the prosecutor's purpose in using the wallet as evidence was to show the possession of a personal item which would ordinarily contain money and which was owned by someone else.   In *State v. Nimrod, supra,* the evidence disclosed that two wallets were found, one belonging to the victim Jacobs, and the other to one Wilder.   In *Nimrod* the court of appeals found there had only been a passing reference to the Wilder wallet; however, in the instant case, the same cannot be said.   In addition to the testimony noted supra, the assistant prosecuting attorney, Mr. Robert Dakopolos, who also tried the *Nimrod* case, and was aware of the probable error attending the use of the second wallet, in the opening part of his argument to the jury challenged defense counsel to explain how the wallets got under the car:

"The issue is Do you believe Danny Kroog's testimony when he said, I saw Edward Nimrod drop an object or objects under the side of that car, and that he went up there and recovered the wallet of Gary Jacobs who had been robbed and viciously beaten minutes before and the other wallet. *Have Mr. Fletcher explain to you how those wallets got there.*" (Emphasis supplied.)

The defense was alibi and faulty identification of this appellant.   Defense counsel, in response to the challenge, questioned the accuracy of what the police officers claimed to have seen regarding the wallets and the validity of the prosecution testimony re-

garding the destruction of some clothing but not the wallets. Then, in the prosecutor's closing argument, he said:

"And you'll remember this other wallet found there with Gary Jacobs' wallet. He mentioned about the suspicious parties call at 40th and Bell. We don't know what happened at 40th and Bell, that's true. But we found two wallets, Gary Jacobs' and one wallet not belonging to any of the four parties in that car, dropped there by Edward Nimrod.

MR. FLETCHER: Your Honor, I'll object to that.

THE COURT: Overruled.

MR. DAKOPOLOS (Continuing): Gentlemen, the conclusive evidence in the case points only one way and that's to the guilt of this defendant, Andre Wright, along with his conspirators, Jerome Wright and Edward Nimrod. And the only verdict that you can return is one of guilty."

1. "DIRECT EXAMINATION BY MR. DAKOPOLOS: _____

Q Would you state your name to the Court and jury, please.
A Dorothy McKelvy.
Q Are you also known as Dorothy Wright?
A Yes.
Q Where do you live?
A 1648 Ella Fitzgerald, Kansas City, Missouri.
THE COURT: Excuse me.
A JUROR: I don't believe the jury can hear, Your Honor.
THE COURT: Speak up a little more, please. What is your address again, please?
A 1648 Ella Fitzgerald. .
Q (By Mr. Dakopolos) On the night of July 13th, 1975, did you let Edward Nimrod, Andre Wright, and Jerome Wright out of the car in the vicinity of 39th and Stateline and then have them run back to the car a few minutes later and hop in?
A On the advice of my attorney, I respectfully refuse to answer on the grounds it might tend to incriminate me.
MR. DAKOPOLOS: Did you hear that?
A JUROR: Barely sir.
THE COURT: Speak up and repeat it louder, please.
A On the advice of my attorney, I respectfully refuse to answer on the grounds that it might tend to incriminate me.
Q (By Mr. Dakopolos) Was your brother, who allegedly lived at 36th and Genessee, home on the night of July 13th, 1975?

We can hardly say the admission of the Wilder wallet was harmless error in view of the obvious use the assistant prosecuting attorney made of this evidence by his blatant argument that appellant and his associates had obtained the wallet by committing another crime at 40th and Bell. The admission of the Wilder wallet, over objection, was error, and the use made of the evidence by the assistant prosecuting attorney convinces us that the error was prejudicial. For this reason the judgment must be reversed and the cause remanded for a new trial.

II.

Because the cause is remanded for a new trial, we deem it desirable to discuss appellant's contention concerning the calling of one Dorothy McKelvy, a/k/a Dorothy Wright by the state as a rebuttal witness[1] as the problem may recur.

A On the advice of my attorney I respectfully refuse to answer on the grounds that it might tend to incriminate me.
MR. DAKOPOLOS: No further questions.
CROSS–EXAMINATION BY MR. FLETCHER: _____
Q Who is your attorney?
A Douglas Merritt.
Q Is he a private attorney?
A. Yes.
Q Did you retain Mr. Merritt to represent you in connection with the possibility of any charges being brought against you in connection with this case?
A Yes.
Q Has Mr. Merritt advised you to take the Fifth Amendment?
MR. DAKOPOLOS: I'll object to anything that Mr. Merritt may have advised her as hearsay, Your Honor.
MR. FLETCHER: Well, Your Honor, I think the prosecuting attorney has opened it up. I think I'm entitled to inquire.
THE COURT: The objection is overruled.
Q (By Mr. Fletcher) Did Mr. Merritt advise you to take the Fifth Amendment in regard to any questions propounded to you—
A Yes.
Q —in regard to the night of July 13th, 1975?
A Yes.
Q You were, in fact, arrested with Jerome Wright and Andre Wright and Edward Nimrod on July 13, 1975, weren't you?
A Yes.

Dorothy McKelvy was apprehended driving the vehicle in which the three males, including appellant, charged with the robbery, were apprehended and all were arrested together. Admittedly, Dorothy McKelvy could have been charged with the robbery also. In *State v. Wright, supra,* a companion case tried prior to the instant one, defendant Jerome Wright objected to the state's calling Dorothy McKelvy as a witness on the ground that she would refuse to testify on self-incrimination grounds; this objection was overruled by the trial court and the witness was called and refused to testify on self-incrimination grounds. We do not know if, in the earlier case, she was called in the state's case-in-chief or on rebuttal. The judgment of conviction was affirmed by the court of appeals, western district, and we denied transfer.

The court of appeals held it was not improper, under Missouri practice, for the court to require a witness to claim the privilege against incrimination in the presence of the jury, citing *State v. Phillips,* 511 S.W.2d 841 (Mo.1974), and *State v. Yager,* 416 S.W.2d 170 (Mo.1967). However, in the *Jerome Wright case,* the court of appeals recognized that, "It is true, as defendant argues, that under the general rule, the refusal of a witness to testify on the basis of the Fifth Amendment does not permit any inference favorable or unfavorable to either of the parties in the case and should not be so argued." 571 S.W.2d at 735.

In the instant case, the prosecuting attorney and the court were informed, prior to Dorothy McKelvy's rebuttal appearance, that she would invoke the Fifth Amendment. The prosecutor acknowledged he knew she had invoked the Fifth in the *Jerome Wright case,* but said he didn't know if she would or would not do so again. The appellant's objection was that by calling Dorothy McKelvy to the stand and questioning her about events of July 13 would, when she "took the 5th amendment", provide the logical basis upon which reasonable people (jury) would be expected to infer that her answers, if given, would be inconsistent with a defense witness, Jerome Wright, and consistent with the guilt of the appellant. Appellant also objected on the ground that he would be denied his right to confront (cross-examine) her because her refusal to testify forecloses further inquiry into the subject of the questions asked but left unanswered.

The prosecutor did not, at first, state what the witness's testimony would rebut but simply that the state has a right to call a witness "and if, in fact, she does want to take the Fifth Amendment, it should be done in front of the Court and jury." The court opined there was a possibility she would not take the Fifth but believed that the state had a right to call her "so if she's going to take the Fifth, it should be, then before the jury."

Later, but before she took the stand, defense counsel again inquired as to what the prosecutor expected her testimony to be. The prosecutor responded by stating she had given previous statements that "rebut" Jerome Wright's testimony relative to the auto trip on the night in question in that she had said earlier that she stopped the car on two separate occasions and all three persons exited from the car, were gone some minutes, and returned to the car running, and reentered the car. The defense counsel responded, saying that whether the witness made such a statement earlier was irrelevant, as the question before the court was what the state intends *she will testify to* in rebuttal and whether the prosecutor knows she will refuse to testify on self-incrimination grounds. The objection was again overruled.

Q Have you ever been advised by your attorney or anyone else that anything that you say might be used against you in connection with the prosecution of a charge of robbery?
A Yes.
Q Is it based solely upon that advice on which you refuse to testify?
A Yes.

MR. FLETCHER: I have nothing further.
REDIRECT EXAMINATION BY MR. DAKOPOLOS: _____
Q Miss Wright—or Miss McKelvy—there are no charges pending against you at this time, are there?
A No."

The right of parties to litigation, including the state, to call witnesses is obviously extremely important. Restricting a party's right to call a witness to the stand upon the prediction of the other party that the witness will refuse to testify is tenuous and presents a real danger to the truth-seeking process of trials. An example of this is found in the case of *Namet v. United States*, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963), cited by appellant as authority in support of his point that the court erred in permitting the witness to testify. In *Namet* the government was going to call two people, Mr. and Mrs. Kahn, who had earlier pled guilty to charges arising out of wagering law violations, the crime with which Namet was charged. Defense counsel told the court and the government's attorney that the Kahns would refuse to testify on self-incrimination grounds and objected to the government calling them as witnesses. The objection was overruled and the Kahns were called to the stand. As it turned out, the Kahns testified to some matters which were in dispute and material to the government's case and invoked the Fifth Amendment as to others. The court stated at 185–187, 83 S.Ct. at 1154–1155:

> "The petitioner's principal contention is that reversible error was committed in permitting the Government to question the Kahns after it was known that they were going to claim their privilege not to incriminate themselves. It is said that when a witness is asked whether he participated in criminal activity with the defendant, a refusal to answer based on the privilege against self-incrimination tends to imply to the jury that a truthful answer would be in the affirmative. This inference, the petitioner argues, cannot properly be used as evidence against a criminal defendant. To support this argument, the petitioner relies on dicta in several federal cases and upon the decision in *United States v. Maloney*, 262 F.2d 535, in which the Court of Appeals for the Second Circuit said, 'Such refusals [to testify] have been uniformly held not to be a permissible basis for inferring what would have been the answer, although logically they are very persuasive.' Id., 262 F.2d at 537.

> "None of the several decisions dealing with this question suggests that reversible error is invariably committed whenever a witness claims his privilege not to answer. Rather, the lower courts have looked to the surrounding circumstances in each case, focusing primarily on two factors, each of which suggests a distinct ground of error. First, some courts have indicated that error may be based upon a concept of prosecutorial misconduct, when the Government makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege. This seems to have been one of the principal reasons underlying the finding of reversible error in *United States v. Maloney*, supra. In that case, the prosecution admitted knowing that two of its key witnesses could validly invoke the privilege against self-incrimination and intended to do so. The prosecutor nevertheless called and questioned them. The court also found that the Government's closing argument attempted to make use of the adverse inferences from their refusals to testify. See also *United States v. Tucker*, 3 Cir., 267 F.2d 212. A second theory seems to rest upon the conclusion that, in the circumstances of a given case, inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant. This theory seems also to have been present to some extent in the *Maloney* decision, where the court noted that the challenged inferences were the only corroboration for dubious and interested testimony by the Government's chief witness. 262 F.2d, at 536–537. On the other hand, courts have failed to find reversible error when such episodes were 'no more than minor lapses through a long trial.' *United States v. Hiss*, 185 F.2d 822, 832 (C.A.2d Cir.). See also *United States v. Amadio*, 215 F.2d 605, 614 (C.A.7th Cir.).

And even when the objectionable inferences might have been found prejudicial, it has been held that instructions to the jury to disregard them sufficiently cured the error."

In the instant case the state, in its brief, undertakes to justify the calling of Dorothy McKelvy as follows:

". . . The appellant claims that this testimony was improper rebuttal because it was of no value in that it did not tend to prove a material proposition nor did it intend to rebut any evidence offered by the appellant. The statement by Ms. Wright, however, that her testifying as to the events of the evening would incriminate her rebuts the testimony of Jerome Wright, appellant's witness, whose story of the events on the night in question described activities on the part of Ms. Wright which were not illegal. All the questions asked Ms. Wright involved the events about which Jerome Wright had testified. If Jerome Wright's testimony had been completely truthful, then Ms. Wright would not have found it necessary to claim the Fifth Amendment privilege. Thus the State's making Ms. Wright claim her Fifth Amendment privilege on the stand was logically relevant in this case. Even though the forcing of Ms. Wright to take her privilege on the stand was logically relevant, it might have been improper for the court to allow the State to force her to take the stand if her taking the stand either violated one of appellant's Constitutional rights or constituted some form of evidentiary trial error. The appellant, however, has cited no case law holding that allowing the State to force a witness to claim the Fifth Amendment privilege on the stand violates the federal Constitution, nor has he cited any case law that it either violates the Missouri Constitution or that it constitutes evidentiary trial error in Missouri."

We are thus confronted with the state's undertaking the calling of the witness in order to obtain the advantage of the inference derived from her refusal to testify on self-incriminatory grounds, to wit, that she, the appellant, and the witness Jerome Wright were engaging in criminal activity. In short, the state argues, in effect, that the witness was called by the state for the purpose of requiring her to refuse to testify before the jury in order that the jury could infer from her refusal that the appellant committed a crime because whatever the witness and Jerome Wright were doing, so too were the rest of the people in the car, including appellant.

■ The question of whether the witness should be permitted to testify when it is *claimed* that the witness will invoke the Fifth Amendment must rest in the discretion of the trial judge. That discretion, of course, can be abused.

■ In the instant case there is no realistic basis for believing the witness would testify to any material matter nor is there anything in the record which would form any basis for a reasonable belief on the prosecutor's part that she would do anything other than refuse to give any relevant or material testimony and do so on self-incrimination grounds. Indeed, the state's main argument in support of the trial court's ruling is that the relevancy of Dorothy McKelvy's appearance in rebuttal was that her *refusal to testify on self-incrimination grounds* constituted a basis (evidence) the jury could, and logically would, use to infer some guilt to Jerome Wright and appellant.

The holdings of *State v. Phillips, supra, State v. Yager, supra,* and *State v. Jerome Wright, supra,* that it is not error for the court to require a witness to "claim the privilege against incrimination in the presence of the jury" presupposes some legitimate basis for calling the witness in the first place, such as some reasonable basis for believing the witness will give some relevant and material testimony. In this case, as in *Namet,* the prosecutor justifiably believed the witness had information which was material and relevant if she would answer the pertinent questions. In *Namet* the court pointed out that the prosecutor need not accept at face value every asserted

claim of privilege, no matter how frivolous. In *Namet* there was a legitimate question concerning the privilege and, as it turned out, the witness did testify to some material matters although invoking the privilege as to others.

In the instant case there was never any question raised as to whether Dorothy McKelvy could legally invoke the privilege by the prosecutor or the court, nor was there any real doubt but what she would refuse to answer all material questions on Fifth-Amendment grounds. If there had been any doubt about that, the court could have allowed interrogation of the witness under oath out of the hearing of the jury, entertained any claims of privilege, ruled on them, and made any coercive orders to compel testimony which were legal and proper, if any were legal and proper. In the instant case, unlike *Namet*, it appears the privilege was legally allowable and therefore no such orders would have been appropriate.

To approve the trial court's ruling under the facts and circumstances of this case, and the respondent's declared purpose in using the witness in rebuttal, would be tantamount to holding that the state may call a witness to the stand without any reasonable expectation of eliciting material evidence but only to let the jury know the witness considers her conduct to have been criminal in nature so that the jury could infer the defendant is guilty. This is not the intent of prior Missouri cases nor of *Namet*.

It would seem obvious that this problem does not lend itself to solution by any hard and fast rule. It is a matter that requires the exercise of sound judgment giving due consideration to the facts and circumstances prevailing at the time the question arises. What we can be certain of, however, is that one end of the spectrum has been reached where, as here, the state declares that the benefit it expects to obtain from the witness is not from any material evidence to be given, but solely from the fact that the witness will be required to invoke the Fifth Amendment in the jury's presence in order

that the jury will believe *from such claim of privilege* that the witness and the defendant were engaged in criminal conduct. In those circumstances, the objection to a witness testifying should be sustained.

The foregoing is set forth to resolve the point under the circumstances as they existed at the time the issue arose in this trial and for guidance at retrial. Whether the circumstances will be the same or similar on retrial is not predictable, but what is said supra should afford guidance should the matter recur.

### III.

Appellant contends the court erred in overruling his motion to dismiss the indictment or suppress identification testimony because the police officers had destroyed certain evidence—the clothing of Jacob's alleged assailants and of the appellant. The record indicates the clothing was inadvertently destroyed by the police prior to trial. There is no evidence that such was done to subvert discovery or in bad faith or for any other nefarious reason. The destruction occurred long before any request for discovery was made. We have considered the point; it has no merit and is overruled.

The judgment is reversed and the cause remanded for a new trial.

DONNELLY, SEILER, SIMEONE and WELLIVER, JJ., concur.

MORGAN, C. J., and RENDLEN, J., concur in result.