STATE of Missouri, Respondent,

v.

Anthony BERRY, Appellant.

No. WD 33267.

Missouri Court of Appeals,
Western District.

April 19, 1983.

As Modified May 31, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied May 31, 1983.

Application for Transfer Sustained
June 30, 1983.

Case Retransferred Oct. 11, 1983.

Court of Appeals Opinion Readopted
Oct. 14, 1983.

Elwood L. Thomas and Anne E. Goos of Shook, Hardy & Bacon, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, P.J., and MANFORD and NUGENT, JJ.

MANFORD, Judge.

This is a direct appeal from a jury conviction for sodomy in violation of § 566.060, RSMo 1978. The judgment is affirmed.

Appellant raises two points, which in summary charge the trial court erred (1) in admitting the testimony of the complaining witness concerning statements made to him by appellant while the two were in adjacent cells, because the conditions under which the statements were made denied appellant his right to counsel and the state intentionally created a situation likely to induce appellant to make incriminating statements; and (2) in refusing to allow appellant's counsel to place a certain witness on the stand to claim his privilege against self-incrimination in the presence of the jury.

On January 19th and 20th, 1981, appellant was an inmate in the Jackson County jail. The complaining witness, Alexander Samuels, was also an inmate. At trial, Samuels testified that appellant and another inmate committed forced acts of sodomy upon him the night of January 19, 1981. The complaining witness further testified that on the night of January 20, 1981, two other inmates committed forced sodomy upon him. Another inmate, one Shay Jackson, was in the same cell, but did not participate in the sodomy.

During a lunch period of the first day of trial, an employee of the Jackson County Department of Corrections placed Samuels in a holding cell adjacent to a cell in which appellant was being held. This employee did not know or recognize appellant, nor was the complaining witness placed in the adjacent cell for any special purpose.

In rebuttal, the complaining witness testified that while in this adjacent holding cell, appellant attempted to "bribe" him, first for $200.00 and then for $500.00 to change his story to the effect that appellant had not sodomized the complainant.

Appellant testified in his own behalf. He denied the sodomization of the complainant. He further testified that the complainant and one Maurice Clay entered into voluntary deviate sexual relations and that he (appellant) threatened to inform the guards on both of them. Appellant testified that Shay Jackson could substantiate his story. Appellant's counsel informed the court that he intended to call Jackson as a defense witness, although Jackson had been endorsed as a state witness. In preparation for Jackson's appearance, appellant's counsel was informed by Jackson's counsel that if called, he (Jackson) would invoke his privilege under the 5th Amendment against self-incrimination. A hearing to determine this question was held outside the presence of the jury during which Jackson, as claimed, did invoke the privilege.

Appellant's counsel insisted that Jackson be required to claim his privilege in front of the jury. The rationale was to dispel the alleged negative inference that the jury would draw if appellant did not call Jackson as a witness. The evidence closed. The jury returned its verdict. Judgment and sentence were entered. This appeal followed the overruling of timely filed after-trial motions.

█ It is first noted under appellant's point (1) that the point was not preserved for appellate review. There was no objection to the testimony of the complainant regarding the bribery offer by appellant, nor did appellant seek any remedial assistance from the trial court. Under *State v. Byrnes*, 619 S.W.2d 791, 793 (Mo.App.1981), the point is not properly preserved. Consideration of the point by this court is made

subject to Rule 29.12(b) and appellant bears the burden of showing that he suffered from some manifest injustice or that there was a miscarriage of justice.

Under this first point, appellant bases his contention upon his right to counsel guaranteed by the 6th Amendment to the Constitution of the United States. Appellant relies principally upon *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) and *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). Both *Massiah* and *Henry* are distinguishable on their facts. In both of those cases, convictions were reversed by the United States Supreme Court because the government had secured, by the use of government agents (*Massiah*) and by an informant (*Henry*), incriminating statements from the accused. These statements were admitted into evidence via the testimony of the agents/informer at trial. The Supreme Court held that the securing of such incriminating statements was in violation of the accused's right to counsel. In summary, the factors which distinguish this case from both *Massiah* and *Henry* are: (a) the complainant Samuels was neither a paid informant nor agent for the state; (b) the appellant and the complainant did not share a common plight as in the case of *Henry;* (c) the placement of the complainant in the adjacent cell was by inadvertence through a custodial officer and complainant was moved within 3–5 minutes after the placement was realized; (d) placement was not for the purpose to deliberately secure information from appellant; and (e) the complainant was the victim of appellant's acts, not one who was placed in the adjacent cell in a common plight setting.

Appellant appears to urge the extension of *Massiah* and *Henry* to include application of the rules in those cases to any instance where a victim or witness has contact with an accused and the latter utters some incriminating remark. The rules in *Massiah* and *Henry* are much narrower than suggested by appellant. It is noted that in both cases, the purpose or reason for placement of the agents/informer with the accused was to deliberately secure incrimina-

ting statements. Such is not the case herein. It should also be noted in *Henry* that the rule was not extended to apply to another cellmate who was not a paid informant, and this other cellmate was allowed to testify that the accused (Henry) told him he had committed the offense. See *United States v. Calder*, 641 F.2d 76 (2nd Cir.1981), cert. denied, 454 U.S. 843, 102 S.Ct. 156, 70 L.Ed.2d 128 (1981) where, in reliance upon *Henry*, testimony of a fellow inmate was permitted against the accused and two weeks later an agreement was reached between the witness and the government. See also *United States v. VanScoy*, 654 F.2d 257 (3rd Cir.1981), where three letters were written by the accused to the inmate witness while both were confined, even though the inmate witness had been an informer for the government in other prior cases. *Massiah* and *Henry* do not control or persuade in the instant case. Appellant's further reliance upon *State v. Peters*, 545 S.W.2d 414 (Mo.App.1976) and *State v. Holt*, 592 S.W.2d 759 (Mo. banc 1979) are equally misplaced because those cases involved witnesses who were agents for the government.

■ The evidence herein reveals that the placement of the complainant in an adjacent cell to appellant was simply the result of an innocent act by authorities. The placement was by inadvertence and not for the purpose of securing any incriminating statement from appellant. Appellant was obviously aware of the relationship of the state and the complainant because on this appeal, appellant concedes that "the witness (Samuels) had a relationship with the prosecution that made it certain that that witness would report anything that defendant said to prosecution."

There was no error, let alone plain error, by the trial court in admitting the rebuttal testimony of the complainant in which he testified that appellant attempted to bribe him (complainant) to change his testimony and disclaim that appellant had participated in the sodomy. There was no manifest injustice or miscarriage of justice.

Appellant's point (1) is meritless and is ruled against him.

Under his final point (2), appellant charges that the trial court erred in its refusal to allow appellant to put one Shay Jackson on the witness stand and require Jackson to claim his constitutional claim against self-incrimination in the presence of the jury.

This situation was precipitated during cross-examination of appellant according to appellant's basic argument on this appeal. Appellant claimed that the complainant and one Maurice Clay had consentingly engaged in sexual conduct and that deviant sexual conduct by forcible compulsion had not occurred. In his direct testimony, appellant intimated that Jackson could confirm his testimony that the complainant and Clay had consentingly engaged in sexual conduct. On cross-examination, appellant was asked and answered as follows:

"Q. This Shay Jackson you talk about, where is he?

A. He is in jail.

Q. Still up there?

A. Yes.

Q. He can substantiate your story, couldn't he?

A. Yes, I suppose, just about everything."

Jackson had been endorsed as a witness for the state. Appellant's counsel then elected to call Jackson. Both the state and appellant were informed that Jackson, beyond admitting his name and that he was in jail, would invoke his privilege against self-incrimination. A hearing by the trial court in the presence of appellant was conducted to determine if Jackson would invoke the privilege. Jackson did invoke the privilege. The trial court then denied appellant's request to put Jackson on the stand and force him to invoke the privilege in the jury's presence.

Appellant contends that the trial court's action permitted the jury to infer, from appellant's "failure" to call Jackson coupled with the prosecution's prior questioning of appellant, that Jackson's testimony would have been adverse to appellant. As properly noted by appellant, this issue usually arises by an objection of the accused to the state's calling a witness whom the prosecution knows will refuse to testify on the grounds of privilege. In that situation, the accused claims prejudice in the allowing of the witness to claim the privilege in the jury's presence because the relationship between the witness and the accused is such that the jury, from the refusal, infers that the witness and the accused were engaged in joint criminal conduct. This situation is illustrated in *Namet v. United States,* 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963) and *State v. Wright,* 582 S.W.2d 275 (Mo. banc 1979).

The refusal to permit a witness to testify lies within the discretion of the trial judge when it is claimed (and in this case by separate hearing it was known) that the witness will invoke his claim of privilege. *Wright, supra; State v. Hustead,* 615 S.W.2d 556, 559 (Mo.App.1981) and *State v. Denmon,* 595 S.W.2d 769, 770 (Mo.App. 1980).

The instant case presents the opposite situation from cases involving the invocation of the privilege by a witness. *Wright* declares that it is not error for the court to require a witness to claim the privilege in the jury's presence. There appears no authority upon the precise question presented herein, to wit: Was the trial court required to permit or direct a witness to declare his claim of privilege against self-incrimination before the jury?

Appellant suggests that there was some question that Jackson could claim the privilege. The separate hearing in which Jackson made the claim dispels this contention. It is further argued by appellant that he was prejudiced because the jury was permitted to infer that his (appellant's) failure to call Jackson was because Jackson's testimony would have been adverse to appellant and by the trial court's action, appellant was prevented from negating "this highly prejudicial inference."

Appellant's contention is based upon the presumption that Jackson's testimony would have supported his own version of what occurred, i.e., that Samuels and Clay participated in consented sexual conduct.

It is just as reasonable to presume that had Jackson taken the stand and invoked his privilege, the jury would have inferred some criminal action had occurred because he (Jackson) was counseled to invoke the privilege. This equally possible and plausible inference would have been adverse to appellant's testimony and could have been a discredit to appellant's testimony. If appellant's account of what occurred was true, then Jackson would have no need to invoke the privilege. In addition, the fact that Jackson refused to testify to anything more than his name and address provided no basis for believing that Jackson would give some relevant and material testimony on this issue. *Wright* at 282.

It has been noted that to allow or refuse to allow a witness to testify is not subject to a prefixed rule. *Wright* and *Denmon, supra.* As noted in *Wright,* the better rule is to permit the trial court to exercise its discretion and judgment under the facts and circumstances of a given case and that review of that discretion and judgment should be conducted for the purpose of determining whether there has been abuse by the trial court.

■ Appellant herein has failed to show how the trial court's ruling refusing appellant's request that Jackson be put on the stand and be required to claim his privilege of self-incrimination in any way prejudiced his rights. As noted, it is as equally possible and plausible that had Jackson invoked the privilege before the jury, the jury might have inferred some criminal conduct occurred and that by reason thereof, Jackson was advised by his counsel to invoke the privilege. Under the facts and circumstances herein, the trial court did not abuse its discretion in refusing appellant's request that Jackson be required to invoke the privilege before the jury.

Appellant's point (2) is meritless and is ruled against him.

The judgment is affirmed.

PRITCHARD, P.J., concurs.

NUGENT, J., dissents in separate dissenting opinion.

NUGENT, Judge, dissenting.

Although I am in agreement with the majority that the trial court generally has the discretion to determine whether to permit witnesses who intend to invoke their Fifth Amendment privilege to take the stand, I must respectfully dissent. I am convinced that the unusual facts of this case illustrate the defendant's "end of the spectrum", mirroring the prosecutor's "end" defined in *State v. Wright,* 582 S.W.2d 275 (Mo.1979) (en banc).

In *Wright,* the trial court permitted the prosecutor to put a witness on the stand who invoked the Fifth Amendment in the presence of the jury. The court acknowledged that the question whether such a witness should be permitted to testify generally rests in the discretion of the trial court. Nevertheless, the court stated "[t]hat discretion, of course, can be abused" and in fact, was abused in that case, where the prosecutor's *sole* purpose was to have the jury hear the witness invoke the privilege. The court referred to this as "one end of the spectrum" and granted defendant a new trial.

The *Wright* decision is most instructive when viewed against the backdrop of those cases in which the trial court's discretion was held not to be abused. In *United States v. Quinn,* 543 F.2d 640, 650 (8th Cir.1976), the court stated that the prosecutor's calling of a witness who has informed the court that he will involve the Fifth Amendment

> may or may not call for a mistrial; each case must be decided in light of its own facts and circumstances, and consideration must be given to the motive of the prosecutor in calling the witness and to the likelihood of the jury drawing unwarranted inferences against the defendant

from the fact that the witness has declined to testify on constitutional grounds.

There, with no indication that the prosecutor's sole purpose was to have the jury hear the witness claim the privilege, and with a need by the government for the full testimony of the witness, calling the witness was held not to justify a mistrial. Similarly, other federal courts have found no abuse of discretion in permitting a privilege-invoking witness to take the stand. *United States v. Vandetti,* 623 F.2d 1144, 1147 (6th Cir.1980) (where the prosecutor's case will be seriously prejudiced by the failure to offer the witness); *Rado v. Connecticut,* 607 F.2d 572 (2nd Cir.1979), *cert. denied,* 447 U.S. 920, 100 S.Ct. 3009, 65 L.Ed.2d 1112 (1980) (where certain factors are considered, such as the prosecutor's intent in calling the witness, the number of questions, the importance of the witness to the state's case, and whether the prosecutor believed the witness actually was entitled to a Fifth Amendment privilege); *United States v. Compton,* 365 F.2d 1, 5 (6th Cir.) *cert. denied,* 385 U.S. 956, 87 S.Ct. 391, 17 L.Ed.2d 303 (1966) (where the prosecutor has reason to believe that the witness has information pertinent and admissible in the absence of the invocation of the privilege).

In other words, when some factor other than a prosecutor's desire simply to have the jury hear the invocation of the privilege is present, the trial court's discretion is generally respected.

Here, of course, the defendant rather than the prosecutor wished the jury to hear the witness invoke the privilege.

Defendants are given no greater right than prosecutors to have such "testimony" heard and, in fact, those federal circuits which have considered the question have concluded that a trial court acts within its discretion in refusing to allow a defense witness to take the stand merely to refuse to testify on Fifth Amendment grounds. *See United States v. Harris,* 542 F.2d 1283 (7th Cir.1976); *United States v. Lacouture,* 495 F.2d 1237 (5th Cir.) *cert. denied,* 419 U.S. 1053, 95 S.Ct. 631, 42 L.Ed.2d 648 (1974); *United States v. Johnson,* 488 F.2d 1206 (1st Cir.1973); *United States v. Beye,* 445 F.2d 1037 (9th Cir.1971); *Bowles v. United States,* 439 F.2d 536 (D.C.Cir.1970) (en banc), *cert. denied,* 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971). The reason given for this conclusion is that just as a prosecutor putting on such a witness with some connection to the defendant hopes to create an inference of guilt by association, a defendant hopes that the jury will infer that if the witness has something to hide, that witness must be guilty rather than the defendant. As the court stated in *United States v. Bowman,* 636 F.2d 1003, 1013–14 (5th Cir.1981), "neither side has the right to benefit from any inference which the jury may draw from the witness' assertion of the privilege . . . because such inferences are of dubious probative value and have a high potential for prejudice."

The rationale of *Wright,* however, suggests something more. It indicates that the trial court may abuse its discretion in permitting a witness to take the stand where the prosecutor's motive is completely improper, i.e., to *create* an adverse inference. That was one end of the spectrum. That same discretion may be abused where the defendant's motive is entirely proper, i.e., to *dispel* an inference in the minds of the jury created by the absence of an available witness said by the defendant to be able to support his version of the facts. That is the opposite end of the spectrum.

This case, the *other* "end of the spectrum" is entirely distinguishable from the situation where a defendant wishes simply to create an inference of guilt in another, a trial tactic to which he has no right. Here, the record does not suggest that defendant wished to call Mr. Jackson so that the jury might infer that he, by taking the Fifth Amendment, was the guilty party. He simply wanted the jury to know that Mr. Jackson's absence stemmed not from the defendant's fear that the witness would prove

him to be lying, but from Mr. Jackson's own reasons, whatever they might be.[1]

The majority opinion would suggest that because the defendant had not claimed that Mr. Jackson was involved in criminal activity (but had merely observed voluntary sexual acts by the alleged victim), and because the jury could infer that Mr. Jackson's invocation of the privilege implied criminal activity on his part, the result could have been an inconsistency discrediting the defendant. That may be so, but the decision whether Mr. Jackson's invoking of the Fifth Amendment privilege would benefit or prejudice the defendant was a matter of trial strategy in which the court had no right to interfere.

As the court said in *Bryant v. State,* 563 S.W.2d 37, 45 (Mo.1978) (en banc), "the responsibility for representing a defendant, including the making of numerous decisions throughout the proceedings, is lodged with defense counsel. Courts ought not interfere with defense counsel's responsibility in this regard unless the facts of the situation clearly demonstrate that justice requires the interference." Here, where counsel made his decision known to the court, and the court was well aware of the unusual box in which defendant had inadvertently placed himself, the court was duty-bound to allow defense counsel to decide how best to extricate his client. The possibility that the tactic might have been less than 100% successful is irrelevant. Nothing in the facts of this case suggests that "justice requires the interference."

Moreover, the court's obligation here to allow the witness to testify is firmly rooted in the principle that just as prosecutors occupy a "quasi-judicial position," charged with the duty "to seek justice, not merely to convict", Rule 4, EC 7–13, judges share that responsibility. *See State v. Stockbridge,* 549 S.W.2d 648, 651 (Mo.App.1977). Our courts have a duty to provide defendants with a fair trial by taking affirmative action to prevent unfairness. Trial judges are not mere disinterested bystanders or even mere referees. A court abuses its discretion if, by its refusal to prevent improper inferences from being created or from not being dispelled, it permits unfairness. Where no hint appears in the record that justice and the search for truth would have been subverted by the testimony of Mr. Jackson, and where the possibility was readily apparent that the testimony could have precluded an unfair and unsupported inference, the trial court had the duty to take some remedial action to offset the improper inference. This was exactly the kind of inference which the Supreme Court found to be unfair in *State v. Wright, supra,* and unlike those referred to in *United States v. Bowman, supra,* the inference which might be drawn from Jackson's appearance had no real "potential for prejudice."

As stated in *State v. Wright, supra,* at 283,

It would seem obvious that this problem does not lend itself to solution by any hard and fast rule. *It is a matter that requires the exercise of sound judgment*

1. Research has revealed only one case, *United States v. Lacouture, supra,* in which a defendant was caught in a comparable dilemma. There, defendant was charged with possession of mescaline found in the trunk of a car which she was driving. She was not the owner of the car, a fact relevant to the issue of whether she had control of the drugs. At trial, a Mrs. Coleman was identified before the jury by a government witness as the car's owner, and her presence in the courtroom was noted. Later, Mrs. Coleman advised the court that if called, she would invoke the Fifth Amendment. The court ruled that she would not be permitted to testify. Just as in the case before us, the jury was left a negative inference resulting from the defendant's apparent failure to call this person who could shed light on the defendant's lack of control over the car. With this and nothing more, I would simply conclude that the Fifth Circuit was wrong in not recognizing the defendant's right to dispel the inference created by the witness' absence. However, there Mrs. Coleman was not merely an alleged observer, as is Mr. Jackson, but, as owner of the car, if defendant were not guilty of possession, Mrs. Coleman almost assuredly would be. She was, as the court said at 1241, a "virtual defendant". Her testimony, then, would have been far more likely than Mr. Jackson's to create the "if this witness has something to hide, defendant must be innocent" inference to which a defendant is not entitled.

*giving due consideration to the facts and circumstances prevailing at the time the question arises.* What we can be certain of, however, is that one end of the spectrum has been reached .... (Emphasis added.)

A consideration of the "facts and circumstances prevailing" in this case indicates that the pendelum has now swung fully from *Wright* (defining the extreme whereby a trial court abuses its discretion in permitting the prosecution's witness to invoke his Fifth Amendment privilege solely to create an adverse inference) to left, mirroring that abuse where the defendant seeks only to dispel an adverse inference inadvertently created before becoming aware that his witness would invoke the privilege. On this ground, we should reverse and remand for new trial.