**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Clayton HUSTEAD, Defendant-Appellant.**

No. 42736.

Missouri Court of Appeals,
Eastern District,
Division One.

March 24, 1981.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 24, 1981.

Tom B. Brown, Edina, for defendant-appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, John C. Reed, Asst. Attys. Gen., Jefferson City, Steven Raymond, Sp. Pros. Atty., Shelbina, for plaintiff-respondent.

DOWD, Judge.

Defendant-appellant Clayton Hustead, was found guilty by a jury of burglary in the second degree, stealing over fifty dollars and forgery. Defendant was sentenced to six years for burglary, six years for stealing and ten years for forgery, with all terms to run concurrently. He appeals. Due to the nature of this case we set out an extensive review of the facts developed at trial in the light most favorable to the state.

The charges against defendant arose from the theft of two John Deere farm tractors belonging to Donald Steffen. Steffen testified that on December 28, 1975 he owned a John Deere 4230 tractor and John Deere 4430 tractor which were kept in a shed on his farm in Shelby County, Missouri. In December, 1975, the tractors were put in the shed for winter. The tractors were discovered missing on January 2, 1976.

At trial the prosecution produced evidence linking defendant to a John Deere 4230 tractor. The operator of a Phillips 66 gas station in Sikeston, Missouri testified that defendant was at his station in late December 1975, accompanied by his employee, who was described as a tall, skinny man with a speech defect. Defendant asked the gas station operator if he could leave a tractor at the station for two or three days and pick it up on January 2, 1976. Defendant returned on January 2, to pick up the tractor. Defendant's employee drove the tractor out of the gas station.

There was evidence that this tractor was driven to Nationwide Tractor Sales, which was located one-half mile from the Phillips 66 station. Leo McKown, an employee of Nationwide, testified that on January 2, 1976 he checked in a John Deere 4230 tractor. The tractor was driven by Larry Culler who was employed by defendant. Culler told McKown that he had driven the tractor over from the Phillips 66 station. Culler said to check the tractor in under the name of Jim Clark of Corning, Arkansas. The president of Nationwide Tractor Sales, Kenneth Hull, testified that his business held an auction sale on January 6, 1976, in which an estimated five hundred tractors were sold, including seven to ten John Deere 4230 tractors. On January 7th a man came to Nationwide to pick up a check for Jim Clark, which was payment for the tractor sold at the auction. The man who came to Nationwide was very thin and had a speech impairment. An employee later identified a photo of Larry Culler as a picture of the man who had picked up the check. There was evidence that on January 8th and 9th defendant attempted to cash a check drawn on Nationwide Tractor Sales and made payable to Jim Clark at a Sikeston Bank. The check was not cashed because defendant was unable to produce any personal identification.

The John Deere 4230 tractor was eventually taken to a John Deere dealership in Shelbina, Missouri where Donald Steffen examined it. At trial Steffen testified that the recovered 4230 tractor was not his. Steffen also testified that while at the dealership he said the tractor was not like the one he had. The prosecution presented two witnesses in an effort to impeach Steffen's testimony concerning his inability to identify the 4230 tractor. These witnesses testified that Steffen had told each of them that he believed the recovered tractor was his.

The recovered 4230 tractor was later returned to the Steffen farm where it was operated for a period of time. The evidence showed that Steffen's 4230 tractor had a manufacturer's serial plate number of 15548. The recovered 4230 tractor had serial number 026842. There was also evidence that defendant's neighbor, Charles Mayfield, discovered the serial number from his John Deere 4230 tractor was missing in the latter part of December or early in January, 1976. Mayfield's tractor had serial number 026842.

The prosecution also produced evidence linking Leamon "Bud" Harold to a John Deere 4430 tractor.[1] John Brewer, a Sikeston farm equipment dealer, testified about a phone conversation he had with Harold on December 28, 1975. Brewer testified, over objection, that Harold said he had recently purchased a John Deere 4430 tractor and wondered how much it would bring in a sale. Brewer purchased the 4430 tractor from Harold on December 30, 1975 for $15,750. A bill of sale and a photocopy of the check given to Harold were admitted in evidence. Dale Belshe, a sergeant with the Missouri Highway Patrol, testified over objection about a meeting between Brewer and Harold on January 22, 1976. Belshe testified that he saw Harold give Brewer a check in the amount of $15,750. The check was signed by Harold and had the words "restitution for 44 tractor" written on it. Brewer also testified that Harold had given him a check for $15,750 which had been signed by Harold.

The 4430 tractor sold to Brewer had serial number 019556–R. The 4430 tractor owned by Steffen originally had serial number 043013–R. There was testimony by John Howard, a farmer who lived eighteen miles from Harold's business address, that in December, 1975 he owned a John Deere 4430 tractor with serial number 019566–R. Following a request from police authorities, Howard discovered the serial number plates were missing from his tractor. He did not know when the plates had been removed.

Steffen, Walter Gordon, Sergeant Belshe and Deputy Sheriff Sam Buckman flew to Ottawa, Illinois to view a John Deere 4430 tractor on January 18 or 19, 1976. At trial Steffen said that this tractor was not his. Walter Gordon identified several distinguishable features on the tractor and testified that the recovered 4430 tractor belonged to Steffen. Belshe testified that the recovered 4430 tractor had serial number 019566, which was the serial number to John Howard's 4430 tractor.

At trial defendant denied that he had any part in the theft of Steffen's 4230 and 4430 tractors. Defendant testified about his activities and whereabouts from December 28, 1975 through January 9, 1976. He presented various checks he had written during this period, as well as several witnesses, in support of his alibi defense. Defendant admitted that he employed Larry Culler as a truck driver during December, 1975 and January, 1976.

We first address defendant's contention that certain statements by the prosecuting attorney during closing argument were improper and prejudicial. The statements in issue were directed at the failure of defendant to call Larry Culler or Leamon "Bud" Harold to testify as defense witnesses. Prior to trial, the trial court was informed by the attorneys for Culler and Harold that their clients would invoke the Fifth Amendment if called to testify at defendant's trial. It appeared that Harold was present at the time of trial, but Culler had left the area

---

1. The jury was instructed, in part, that defendant either acted alone or acted together with Larry Culler and Leamon "Bud" Harold in the burglary and stealing offenses.

sometime prior to trial. The trial court sustained defendant's motion in limine, which precluded the prosecution from calling either Culler or Harold to the stand. Thereafter, with knowledge that the witnesses would take the Fifth Amendment if called to testify, the prosecuting attorney in the rebuttal portion of his closing argument stated the following:

"I want to point out one thing that is really important. There's been all kinds of evidence and they have brought in a lot of witnesses for the defense but who would be the person they should bring up here? The employee, Larry Culler.

\* \* \* \* \* \*

Larry Culler is the man most involved in this and to give account for the whereabouts of himself and his employer, Clayton Hustead, but he isn't here. They brought other people here but not the man who would know. He could say where he had been on those particular days. I think when he said you can use your common sense, that is where you can use your common sense and your thinking caps. That is where you can use common sense when you get in the jury room. There was another person they could have subpoenaed. There has been a lot of evidence about selling a 4230 John Deere tractor.

\* \* \* \* \* \*

His name is Leamon "Bud" Harold, Jr.

\* \* \* \* \* \*

He could have been here. The defendant has a right to subpoena any witnesses they want. They are entitled to have witnesses called in their defense. They don't have Leamon "Bud" Harold. You don't hear one word from him about anything."

Defendant's objections to the above comments were overruled by the trial court. Immediately after the prosecutor first mentioned Larry Culler in the above argument defendant's attorney moved for a mistrial and asked that the prosecuting attorney be reprimanded because "[t]his Motion in Limine was sustained and that is clearly im-

proper." The defense attorney also stated the argument was "in direct contradiction of the Court's ruling." This objection was sufficient to notify the trial court of the nature of the objection and adequately stated the grounds upon which defendant now relies for his claim of error.

The reference to Culler took on added significance due to the fact that defendant had filed a motion in limine prior to trial which sought to prevent the state from using a statement made by Culler to police authorities on January 22, 1976 that the defendant and he (Culler) loaded two tractors onto defendant's truck, one of which was a 4230 tractor. This statement directly contradicted defendant's testimony and supported the state's theory of the case. The motion in limine was initially overruled and the prosecuting attorney read substantial portions of the statement to the jury during his opening statement. But during the trial, when the state attempted to introduce Culler's statement into evidence, the trial court reversed its earlier ruling and sustained defendant's motion in limine. Thus, Culler's statement was never admitted into evidence. Throughout trial, other statements made by Culler and his actions were frequently brought to the jury's attention. His conduct was critical in implicating defendant in all crimes charged.

As noted earlier, after consultation with the attorneys for Culler and Harold, the trial court ruled that the state could not call Culler or Harold to the stand. Whether a witness should be permitted to be called to testify when it is claimed that the witness will invoke the Fifth Amendment is a matter which rests in the sound discretion of the trial judge. *State v. Wright*, 582 S.W.2d 275, 282 (Mo. banc 1979). In addition, the refusal of a witness to testify on self-incrimination grounds does not permit any inference favorable or unfavorable to either party in the case and should not be so argued. *State v. Wright*, 571 S.W.2d 734, 735 (Mo.App.1978).

In viewing the comments by the prosecuting attorney in the context in which made, we believe his statements clearly

raised an inference that any testimony by the uncalled witness, Larry Culler, would be damaging to defendant. The prosecuting attorney prefaced his comments by stating he wanted to point one thing out that was "really important." He then emphasized that while the defense had called numerous witnesses at trial, they failed to call the one man who had knowledge of defendant's activities during the period in question—Larry Culler. The prosecuting attorney then urged the jury to "use your common sense" when considering defendant's failure to call Culler to testify.

■ We believe it was highly improper for the prosecuting attorney to argue an adverse inference from the failure of defendant to call Larry Culler as a defense witness knowing that the witness would invoke his Fifth Amendment right against self-incrimination. *See United States v. Miller*, 460 F.2d 582, 588 (10th Cir. 1972); *Bradley v. United States*, 420 F.2d 181, 185–187 (D.C.Cir.1969); *McClanahan v. United States*, 230 F.2d 919, 926 (5th Cir.) *cert. denied*, 352 U.S. 824, 77 S.Ct. 33, 1 L.Ed.2d 47 (1956). *See also United States v. Dailey*, 524 F.2d 911, 917 (8th Cir. 1975). The nature of these comments together with the fact that they were directed at such a critical witness in this case rendered the statements harmful to defendant's right to a fair trial. Most important, these statements were permitted to come in by the trial court and no curative type instruction to disregard was given. Under these circumstances, we hold that the prosecutorial comments were prejudicial, and therefore, defendant is entitled to a new trial.

Defendant also contended that the trial court erred in admitting into evidence certain extrajudicial statements made by Culler and Harold in late December, 1975 and early January, 1976, and in permitting the state to read Culler's January 22, 1976 declarations during its opening statement. We will not address these issues on this appeal

due to our prior disposition of this case, and because we cannot foresee the circumstances in which the issues may arise in a new trial or whether witnesses will again be unavailable to testify.

■ Defendant also contended that there was insufficient evidence adduced at trial to support the jury's finding of guilt on all three offenses. In determining whether there was sufficient evidence to support the verdicts the reviewing court must consider the facts in evidence and the favorable inferences reasonably to be drawn therefrom in the light most favorable to the state and all evidence and inferences to the contrary must be disregarded. Review is limited to whether the evidence is sufficiently substantial to make a submissible case. *State v. Clark*, 596 S.W.2d 747, 749 (Mo.App.1980). We have carefully reviewed the record in this case and find that there was sufficient substantial evidence submitted to the jury to support the verdicts for stealing and forgery.

Concerning the charge of burglary, however, we hold as a matter of law that there was insufficient evidence to support the verdict. Defendant was charged with burglary in the second degree in violation of Section 560.070 RSMo 1969.[2] Defendant was charged as a participant in breaking into the shed on the Steffen farm where the two tractors were kept.

■ In order to sustain a conviction for burglary in the second degree there must be evidence of a forcible breaking and entering into a building.[3] *State v. Williams*, 416 S.W.2d 71, 72 (Mo.1967); *State v. Ewing*, 298 S.W.2d 439, 443 (Mo.1957); *State v. Sloan*, 548 S.W.2d 633, 637 (Mo.App.1977). The force to constitute a breaking under the statute need not be more than the pushing open of a door which has been shut. *State v. Spry*, 592 S.W.2d 313, 315 (Mo.App. 1979); *State v. Harris*, 539 S.W.2d 617, 619 (Mo.App.1976).

---

**2.** Repealed and replaced by Section 569.170 RSMo 1978.

**3.** We note that under the new burglary statute, Section 569.170, effective January 1, 1979, the concept of "breaking" has been replaced with "entering or remaining unlawfully."

The testimony at trial concerning the shed was conflicting. Steffen testified that the east side of the shed has never had a door on it. Sergeant Belshe seemed to testify that there were doors on every side of the shed. Deputy Sam Buckman testified that he observed tractor tracks leading from the west side of the shed. He also testified that the tractors had to exit from the west doors because the other doors were not high enough for the tractors to pass through. Examining the evidence in the light most favorable to the state, we can say the evidence showed the shed had doors on all sides and that the tractors were removed through the doors on the west side.

Lacking, however, is any evidence that these doors were ever closed prior to the theft of the tractors. There is no evidence from which one could infer a breaking into the shed. Walter Gordon testified that he and one other employee put the tractors in the shed for the winter. He never mentioned whether the doors were thereafter closed. Steffen testified that he did not recall whether the doors were closed at the time of the theft. There was no evidence that Steffen was present at the shed when the tractors were put inside or whether he ever viewed the shed at any time prior to the discovery that the tractors were missing.

In the absence of any evidence of how entry was made into the shed or that the doors to the shed were closed prior to the theft the state has failed to present a submissible case of burglary in the second degree. The fact that there were doors, without more, is insufficient. Entry through an open door is not burglary. *State v. Ewing, supra.* The fact that the doors on the west side of the shed may have been wide open when the tractors were discovered missing would also not be sufficient. Breaking out of a building is not burglary. *State v. Crow,* 600 S.W.2d 162, 165 (Mo.App.1980). There was no evidence of any pry marks or similar evidence on the doors of the shed.

Absent any evidence of a forcible breaking and entering into the shed the conviction for burglary in the second degree cannot stand. The prosecution was given one opportunity to offer whatever proof it could assemble. The failure to prove a submissible case was not affected by any trial court ruling concerning proffered evidence. Under these circumstances, the prosecution, through inadvertence or inability, failed to present sufficient evidence to support the burglary conviction and is precluded from obtaining another opportunity to supply the missing evidence.

We do not reach defendant's remaining allegations of error on this appeal because they are not preserved for review or are unlikely to reoccur in a similar context in the new trial.

For the foregoing reasons, defendant's conviction for burglary in the second degree is reversed, and the convictions for stealing over fifty dollars and forgery are reversed and remanded for further proceedings.

STEPHAN, P. J., and STEWART, J., concur.