STATE of Missouri,
Plaintiff-Respondent,

v.

Sterling HORNE, Defendant-Appellant.

No. 48903.

Missouri Court of Appeals,
Eastern District,
Division One.

April 16, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 17, 1985.

Application to Transfer Denied
June 25, 1985.

Mark Anthony Richardson, Asst. Atty. Gen., Jefferson City, for defendant-appellant.

John Michael Putzel, Asst. Public Defender, St. Louis, for plaintiff-respondent.

KAROHL, Judge.

Defendant Sterling Horne was charged with first degree robbery, § 569.020 RSMo 1978, and first degree assault § 565.050 RSMo 1978. A jury found defendant guilty of the included offense of second degree robbery. The court declared a mistrial on the assault charge because the jury was unable to reach a verdict. Defendant, found to be a persistent offender, was sentenced to twenty-two years imprisonment. In his appeal defendant contends preserved error in the exclusion of part of defendant's evidence and plain error in permitting the state to make reference to defendant's failure to testify in closing argument. We affirm.

Defendant does not question that the state made a submissible case with the following evidence. About noon on September 29, 1983 defendant entered Morris Mathis' Print Shop in the city of St. Louis. Defendant had a typewriter that he offered to sell Mathis. When Mathis said he "just wasn't interested in it" defendant asked Mathis for his wallet. Mathis reached for his wallet and "saw a hand come up as if he was going to strike me over the head." Defendant had a pipe or similar object in hand which Mathis was able to grab and throw out a window. The defendant beat and "continually hammered" on Mathis, took his wallet and then left. Mathis had written down the license number of defendant's car when he first arrived with three others. Bruce Coad witnessed a person running out of Mathis' shop carrying a typewriter saying "that the guy didn't want to buy it." He saw that person take off in an orange Pontiac LeMans and heard Mathis "yelling next door." The police arrived and found a license number XEC–923 "on one of the desks in the office." The vehicle license number was registered to the defendant.

Mathis identified defendant on three occasions. While in the hospital he identified defendant' in a photo display. Later at a police station he identified defendant in a lineup. Finally, his identification at trial was unequivocal. After the lineup at the police station Mathis was given a photo display including a photograph of George Crocket, the person defendant accused of committing the crimes. Mathis identified no one in the second photo display. At trial defendant and George Crocket were presented together before Mathis and the jury with Crocket wearing defendant's purple sweater. Mathis identified the defendant as "the man who beat and robbed" him.

The defendant did not testify during the trial. His version of the events was presented to the jury during cross-examination of state's witness Detective Atherton. Defendant's counsel asked Detective Atherton to read the defendant's statement which he gave to the police after his arrest. The statement was read verbatim. Summarized defendant's statement given to the police was that George Crocket offered to pay him $10.00 to transport and thereby help Crocket sell a typewriter. Diane and John Black were also in the car when defendant took Crocket to the location of the crime. They waited in the car while Crock-

et went in the store and returned ten minutes later explaining that he could not sell it. Defendant then drove Mr. Crocket to a second location where the typewriter was sold and Crocket paid defendant $10.00. He learned of the robbery and the involvement of his automobile when he was arrested. Defendant's statement caused Detective Atherton to present the photo lineup containing a picture of George Crocket to Mr. Mathis.

■ Defendant advised the trial court that he planned to call Crocket as a defense witness. The state's objection was that it was improper to call Crocket because the only purpose would be to put in front of the jury the improper inference that Mr. Crocket would testify favorably for the defendant. The trial court heard counsel for Crocket [in an unrelated matter] who explained that Crocket "does not want to say anything", "is not wanting to testify", and "is not wishing to testify." It is undisputed that Crocket's testimony was relevant and material because he was present at the time of the events. The typewriter was Crocket's. The only doubt is whether or not Crocket would invoke the privilege. This could have been determined out of the hearing of the jury. *State v. Wright*, 582 S.W.2d 275, 283 (Mo. banc 1979). It is possible that Crocket may have testified to some material matters although invoking the privilege as to others. *Wright* at 283. It is not improper for the court to require a witness to claim the privilege against self-incrimination in the presence of the jury. *Wright* at 280. Further, "restricting a party's right to call a witness to the stand upon the prediction of the other party that the witness will refuse to testify is tenuous and presents a real danger to the truth seeking process at trials." *Wright* at 281. We are bound by the principles stated in *Wright*. However, we can not foresee a case where the court would make a witness take the stand solely to require that the privilege be asserted before the jury. The possible or probable prejudice would appear to outweigh any useful purpose. All

that is required is that the trial court make an adequate record that the privilege will be asserted by some reliable and certain means. Here the prediction was by the witness' counsel but it was never developed beyond the level of prediction.

■ Defendant does not now argue error in sustaining the prosecution's objection to Crocket's testimony. It is because Crocket was thereby made unavailable that defendant intended to call Donald Jones to testify to a statement made by Crocket to Jones. The trial court sustained the prosecutor's objections to the testimony of Jones on grounds of hearsay. The defendant made an offer of proof and contends that the statement of Crocket constitutes a statement against penal interests which is admissible as a recognized exception to the hearsay rule. To be a declaration against interest the declaration must have related a fact against the apparent pecuniary or proprietary or penal interest of the declarant when his statement was made. *State v. Bartz*, 544 S.W.2d 86, 89 (Mo.App.1976). The interest of the declarant must be so apparent as to have been presumably in the declarant's mind when the declaration was made. *Id.*

■ The statement that Jones was prepared to testify Crocket made to him was, "I think I'm going to have to knock Spoon because he is going to tell the police about me doing that robbery on Olive." [1] We find no error in refusing to allow Donald Jones to testify that Crocket made this statement to him. In reviewing this point we assume that the statement of Crocket was made. Crocket's statement does not say that he was the robber. It says only that the defendant is going to tell the police that Crocket committed the robbery. The statement is therefore not an acknowledgement by Crocket that Crocket committed the crime and does not fall within the penal interest exception. Further, "[a]s a general rule, third-party declarations against penal interests are not admissible in criminal proceedings." *State v. Jones*, 671 S.W.2d

---

**1.** The word knock in this context means kill.  Spoon is a nickname for defendant.

296, 297 (Mo.App.1984). The Missouri Supreme Court in *State v. Turner*, 623 S.W.2d 4 (Mo. banc 1981) held that such statements against penal interests are admissible only where "substantial indicia of reliability appear and declarant's complicity if true would exonerate the accused." *Id.* at 9. If the court had permitted Jones to testify that Crocket made the statement, there is no evidence to corroborate or otherwise indicate that it was reliable. Defendant did not call as witnesses the other two passengers in his automobile. His statement to the police indicates Crocket attempted to sell the typewriter to Mathis but his statement alone is not a substantial indicia of reliability that Crocket's statement has the meaning defendant assigns to it. The trial court correctly excluded the testimony as inadmissible hearsay both because it was not a clear declaration against penal interests and because it was not supported by any substantial indicia of reliability. Defendant's first point is denied.

Defendant also contends the court erred in permitting the prosecutor to make reference to defendant's failure to testify during the prosecutor's rebuttal closing argument. Objection on this issue was overruled. Our review is limited to plain error under Rule 29.12 because this point was not preserved in defendant's motion for new trial.

Defendant argued in closing argument that the jury should consider defendant's handwritten statement which he gave to the police and which was admitted into evidence. Counsel urged the jury to read the statement and give it credit.

In rebuttal closing argument the prosecutor said:

So, this free and voluntary statement is very self-serving. It also lies. He ignored that aspect. So, you can give it whatever consideration you want, but don't give it the same consideration you gave Morris Mathis who got up there and testified under oath and was cross-examined.

The trial court has wide discretion in controlling the scope of closing argument. *State v. Shaw*, 636 S.W.2d 667, 675 (Mo. banc 1982). Review of closing argument is warranted under the plain error doctrine if the prosecutor's remarks infringe upon defendant's right against self-incrimination. *State v. Reed*, 583 S.W.2d 531, 533 (Mo.App.1979). If the state's rebuttal argument was a direct and certain comment on the defendant's failure to testify it may be plain error. Both direct and indirect references to defendant's failure to testify are forbidden. *State v. Chunn*, 657 S.W.2d 292, 294 (Mo.App.1983).

We find that the comment was not such reference. The statement which defendant gave the police as read in evidence also mentioned that defendant's brother took defendant's car the day of the robbery. There was evidence that defendant's brother had died two years before the robbery incident. The argument of the prosecutor was a response to defendant's argument to give the written statement of defendant weight and credit. It merely invited the jury to compare the weight and credit of defendant's written statement with the testimony of Morris Mathis. The state's rebuttal argument was not retaliation argument in the sense approved in *State v. Wood*, 596 S.W.2d 394, 403 (Mo. banc 1980); and *State v. Chunn*, 657 S.W.2d 292, 295 (Mo.App.1983). However, it was nothing more than a comment on the evidence and a reply to defendant's argument. We find that the rebuttal argument was not an implied direct or an indirect reference to the defendant's failure to testify.

Judgment affirmed.

PUDLOWSKI, P.J., and GAERTNER, J., concur.