STATE of Missouri,
Plaintiff-Respondent,

v.

Lobester LOGGINS,
Defendant-Appellant.

No. 49332.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 10, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 28, 1985.

Application to Transfer Denied
Nov. 21, 1985.

---

Debra Buie Arnold, Asst. Public Defender, Richard L. Turner, St. Louis, for defendant-appellant.

John Munson Morris, Asst. Atty. Gen., Jefferson City, Nels Moss, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

Appellant Lobester Loggins was convicted by a jury of capital murder. The Circuit Court of the City of St. Louis entered judgment on the jury's verdict and sentenced him to a term of life imprisonment without possibility of parole or probation for fifty years. He raises two points on appeal. First, appellant argues the trial court erred in refusing to permit his accomplice, Anthony McIntyre, to testify after the court was advised that McIntyre would invoke the fifth amendment. Second, appellant contends the trial court erred in failing to declare a mistrial *sua sponte* after the prosecutor allegedly alluded to appellant's failure to testify. We affirm.

Early in the morning of January 2, 1984 after attending a party at his parents' house, appellant and some of the guests drove to the top of Art Hill in Forest Park. These guests included Nathaniel Gibson, Anna McIntosh, Deatrice Edmundson, Anthony McIntyre, and Nathaniel Mitchell, the victim. During the drive, McIntyre and the victim argued over something McIntyre said to Ms. McIntosh. At one point, McIntyre obtained a rope from the van and tried to choke the victim who managed to pull free.[1]

On Art Hill, McIntyre told the victim that he was going to kill him and again tried to wrap the rope around his neck. Not apprehending the seriousness of the situation, the victim and the others laughed. Thereafter, the victim, McIntyre, and Gibson went to an area where some

sledders had built a bonfire. Gibson then returned to the van where he observed appellant making a noose with some rope. He and appellant later left for the bottom of the hill. As they left, appellant directed Ms. McIntosh and Ms. Edmundson to tell McIntyre and the victim that they had gone down the hill to smoke "weed."

Both McIntyre and the victim joined appellant at the bottom of the hill. Gibson returned to the van to retrieve a rifle ostensibly to confront some people at the bonfire who earlier had insulted the victim. Once back at the bottom of the hill, however, Gibson gave the rifle to McIntyre. At that time, appellant caught the victim, looped the noose around his neck, and drew it taut. Appellant then sat on the victim's chest and continued to strangle him. McIntyre subsequently threw the end of the rope over a tree. Thereafter, appellant, McIntyre, and Gibson returned to the van abandoning the victim's body in the snow.

When appellant returned to the van, Ms. McIntosh and Ms. Edmundson asked where the victim was. Appellant responded, "We was all at a party. Ain't nothing about going to the park. Don't nobody know nothing. Go home and go to sleep." Still later, Ms. Edmundson asked appellant, "Did you all kill [the victim]?" Appellant replied, "Yes, we killed him."

At trial, appellant's counsel sought to call his accomplice, Anthony McIntyre, as a witness. During an in chambers discussion, McIntyre's counsel told the trial court that she would advise McIntyre to invoke his privilege against self-incrimination. Thereafter, the trial court ruled that it would not permit McIntyre to testify. Nevertheless, appellant's counsel called McIntyre to the stand. At sidebar, the trial court repeated its ruling that McIntyre would not be a witness. Appellant now argues the trial court erred because its ruling was based on the mere prediction of McIntyre's counsel that he would not testify. We disagree.

---

1. Earlier in the evening, appellant told Gibson that McIntyre wanted to kill the victim.

■ The refusal to permit a witness to testify lies within the sound discretion of the trial court when it is claimed the witness will invoke his fifth amendment privilege against self-incrimination. *State v. Wright*, 582 S.W.2d 275, 282 (Mo. banc 1979). This is a matter which requires the trial court to exercise sound judgment giving due consideration to the facts and circumstances existent at the time the question arises. *Id.* at 283. The trial court need only make an adequate record that the privilege will be asserted by some reliable and certain means. *State v. Horne*, 691 S.W.2d 402, 404 (Mo.App.E.D.1985). Although suggested, the witness need not be interrogated out of the hearing of the jury to determine whether he will invoke the privilege. *Wright*, 582 S.W.2d at 283. Finally, neither party may use the refusal of a witness to testify on self-incrimination grounds for any inference, whether favorable or unfavorable to either party. *State v. Hustead*, 615 S.W.2d 556, 559 (Mo.App. 1981).

The question before this court is not unlike the one encountered in *State v. Jackson*, 659 S.W.2d 12 (Mo.App.1983). In *Jackson*, when the defendant sought the testimony of his two accomplices, the trial court appointed counsel to confer with them. The attorney subsequently reported that each accomplice intended to refuse to testify on grounds of self-incrimination. The trial court refused to call them to the stand. On appeal, this court held the trial court's decision proper. *Id.* at 14.

■ Accordingly, under the facts and circumstances of the present case, the trial court did not abuse its discretion. The trial court further made ˙an adequate record whether appellant's accomplice, McIntyre, would assert his fifth amendment privilege. At the in chambers conference, appellant's counsel advised the trial court that he had served a subpoena on McIntyre. McIntyre's counsel was present and stated if appellant's attorney wanted to question her client on the facts of this case or on matters which McIntyre was about to be tried, she would not only advise him to take the fifth amendment, she also would not even want him brought to the courtroom. She further stated that although it were possible McIntyre would testify over her advice, this was not the situation in this case. Finally, during this conference, the trial court asked McIntyre's counsel, "What you're saying here, you're not going to permit your client to testify with respect to any facts and circumstances involved in this case?" She responded, "That's right."

■ In view of these vigorous and unequivocal statements by McIntyre's attorney that he would assert his fifth amendment privilege, the trial court acted properly in refusing to call him to the stand. Taken as a whole the statement's of McIntyre's counsel during the in chambers conference rise above the level of mere prediction that a witness will refuse to testify. As we have previously stated, this court cannot foresee a case where the trial court would require a witness to take the stand solely to assert the privilege before the jury. The probability of prejudice or impermissible inference would outweigh any useful purpose. *Horne*, at 404.

We next consider appellant's final point on appeal. In appellant's closing argument, his attorney argued that Ms. Edmundson, appellant's girl friend, had testified before the grand jury that appellant had said, "They killed Jack." The prosecutor immediately interrupted and his objection was sustained on the ground the statement was not in evidence. In his rebuttal, the prosecutor argued:

Now, he said this stuff doesn't prove anything, doesn't prove any element. He goes over and over. How does he answer, 'Did you kill him?' 'Yes.' 'Did you kill him?' 'We killed him.' There has been *no witness*, no evidence come before you *to deny*, to refute, to contradict that statement. (Emphasis added). He wasn't saying it to me, he wasn't saying it to a police officer, he was saying it to a confidant, the mother of his child who has no reason to come in here and lie for the State.

Appellant now contends the trial court committed plain error in failing to declare a mistrial *sua sponte* based on the above rebuttal comments. He suggests the prosecutor's statement that "no witness" had "come before [the jury] to deny, to refute, to contradict" Ms. Edmundson's testimony that appellant admitted killing the victim violated his right not to testify. Appellant further argues the use of the word "deny" with the fact that appellant was the only person present when the admission was made made the prosecutor's statement a direct and certain reference to appellant's failure to testify. We disagree.

The fifth amendment to the United States Constitution; Article I, Section 19 of the Missouri Constitution; RSMo § 546.270 (1978); and Rule 27.05 guarantee criminal defendants the right not to testify and forbid comments by others on their exercise of this right. *State v. Chunn*, 657 S.W.2d 292, 294 (Mo.App.1983). Forbidden comments include direct and indirect references to defendants' failure to testify. Direct references utilize the words "defendant," "accused," and "testify." *State v. McNeal*, 517 S.W.2d 187, 188 (Mo.App.1974). Indirect references cause the jury to infer that the challenged statement was a comment on the defendant's failure to testify. *State v. Reed*, 583 S.W.2d 531, 534 (Mo.App. 1979).

This great right, however, is balanced by the trial court's wide discretion in controlling the scope of closing argument. *State v. Shaw*, 636 S.W.2d 667, 675 (Mo. banc 1982), *cert. denied*, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982). It is in the best position to observe the effect of contested statements on the jury. *State v. Raspberry*, 452 S.W.2d 169, 173 (Mo.1970). Therefore, under plain error, we will disturb the trial court's decision whether the prosecutor allegedly alluded to a defendant's failure to testify only where the references are direct and certain. *State v. Hutchinson*, 458 S.W.2d 553, 555 (Mo. banc 1970); *Horne*, at 405. Merely stating that the evidence is "uncontradicted" or that a defendant has failed to offer evidence or

call a witness is not a direct and certain reference. *State v. Robinson*, 641 S.W.2d 423, 426 (Mo. banc 1982); *State v. Floyd*, 598 S.W.2d 517, 521 (Mo.App.1980), *cert. denied*, 449 U.S. 960, 101 S.Ct. 373, 66 L.Ed.2d 227 (1980).

In the present case, the trial court did not commit plain error in failing to declare a mistrial *sua sponte*. The prosecutor's rebuttal comments were not direct and certain references to appellant's failure to testify. The words "defendant," "accused," and "testify," which ordinarily trigger a direct reference, were not used. Although the Eighth Circuit has cautioned prosecutors about the use of the word "undenied," the prosecutor's use of the word "deny" in the instant case did not invade appellant's right to remain silent. *See United States v. Sanders*, 547 F.2d 1037, 1042–43 (8th Cir.1976), *cert. denied*, 431 U.S. 956, 97 S.Ct. 2679, 53 L.Ed.2d 273 (1977). The sum effect of the prosecutor's challenged remarks operated only to state that Ms. Edmundson's statement was uncontradicted and that appellant called no witnesses and presented no evidence to rebut her testimony.

The challenged remarks, moreover, cannot be considered an indirect reference to appellant's failure to testify. Viewed in their context, the challenged statements would not lead the jury to infer that the prosecutor was commenting on appellant's failure to testify. At trial, the prosecutor's comments provoked no objection from appellant's counsel or from the trial judge who was in the best position to determine whether the contested remarks created a prejudicial effect on the jury.

Indeed, the trial court could have determined that the prosecutor's comments were responsive to appellant's counsel's closing remarks concerning Ms. Edmundson's grand jury testimony, which was not in evidence. It is not improper for a prosecutor to retaliate, in rebuttal, to an issue raised by a defendant's argument even if the prosecutor's comment would exceed the normal scope of closing argument. *State*

*v. Wood,* 596 S.W.2d 394, 403 (Mo. banc 1980), *cert. denied,* 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980). In his closing argument, appellant's counsel argued that Ms. Edmundson testified before the grand jury that appellant told her, "They killed Jack." The prosecutor's contested rebuttal comments merely repeated what Ms. Edmundson's trial testimony had been. In response to appellant's argument that Ms. Edmundson's grand jury testimony, which was not in evidence, was different from her trial testimony, the prosecutor was entitled to argue, in rebuttal, that appellant had called no witnesses nor presented any evidence to contradict Ms. Edmundson's statements.

Judgment affirmed.

CARL R. GAERTNER, J., concurs.

KAROHL, J., concurs in separate opinion.

KAROHL, Judge, concurring.

I concur in affirming the conviction in this case. Defendant-appellant relies on two issues which occur and recur with alarming frequency. They need not arise and could easily be avoided; for that reason I write.

The record supports a finding that Anthony McIntyre would not testify. The record statement of McIntyre's counsel was definite and adequate to convince the court McIntyre would not testify. This satisfies the "reliable and certain means" suggested in *State of Missouri v. Sterling Horne,* 691 S.W.2d 402 (Mo.App.E.D., 1985). It would also be possible to swear the witness outside the hearing of the jury in order to determine the intent of the witness. In the *Horne* case, counsel for Crocket, the witness defendant sought to call, merely informed the court the client did not wish to testify. Here, counsel informed the court unequivocally that McIntyre would assert the Fifth Amendment. Further, no record was made by defendant about the evidence defendant hoped to present through McIntyre in order to afford the court an opportunity to balance

defendant's need of such witness and the relevance and probative value of the testimony against the useless exercise of calling the witness or the potential prejudice that may occur. A *record* is required on the need for the testimony and a basis for finding the witness will not testify. Based on that record the trial court decides the issue. Without a record no basis exists for the trial court to rule or for review on appeal.

The second issue is more troublesome. I concur that no plain error resulted even though the words "no evidence came before you to deny" were used. The remark in issue was, "[t]here has been no witness, no evidence come before you to deny, to refute, to contradict that statement." To protect the integrity of this right guaranteed by constitutions, statute and rule it is frequently necessary to reverse, on this issue, as a matter of preserved error. No one except the defendant could admit or deny Ms. McIntosh's version of defendant's statement, and the use of the words evidence and deny in the same sentence could equate with "defendant," "accused," and "testify."

It appears altogether unnecessary that such arguments occur and recur with the effect of provoking appeals. Rather than argue what the evidence fails to show, a more appropriate rebuttal would refer to the evidence the jury did hear. Ms. Edmundson testified that [before leaving the park] she asked defendant where the victim was. Defendant told her: "He's now sleeping." The next day defendant said: "Yes, we killed him." This testimony wholly supports the prosecutor's argument with the exception of the single offending sentence which was mixed in the argument about defendant's admission. Defendant made no argument that a witness or evidence denied, refuted or contradicted defendant's admissions. The offending statement appears to be a rebuttal of an argument not made. It serves only to present the defendant with the gift of a substantial ground of appeal. Where the evidence of guilt is so persuasive this type of argument

is reckless and serves no justifiable purpose. Such is the case here. Only because the evidence is overwhelming, no plain error occurred. Where the evidence is weak such argument may be either reckless or planned. If the former, plain error may occur; if the latter, the case must be retried. In either event, such argument should be avoided. Skilled, careful and planned prosecution could and should remove this type of argument and contention of error from trials of criminal cases. In addition to insuring fair trials, greater certainty that a conviction is sound on the evidence, and supported by a proper respect for the law would result.