Betty CRUCE, Respondent,

v.

AUTO–OWNERS MUTUAL INSURANCE COMPANY, Appellant.

No. WD 45571.

*Missouri Court of Appeals, Western District.*

March 9, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 1993.

R. Frederick Walters, Kip D. Richards, Walters Bender & Strohbehn, P.C., Kansas City, for appellant.

Farrell D. Hockemeier, Richmond, for respondent.

Before ULRICH, P.J. and SHANGLER and FENNER, JJ.

ULRICH, Presiding Judge.

Auto–Owners Mutual Insurance Company (Auto–Owners) appeals from an adverse judgment following a jury verdict in an action brought by Betty Cruce to recover under the fire insurance provisions of two separate policies issued to her by Auto–Owners. Auto–Owners contends that the trial court erred in overruling Auto–Owners' motion for a new trial because the trial court (1) admitted inadmissible and otherwise irrelevant hearsay into evidence by allowing a witness to testify as to the out-of-court statements of another witness, and (2) permitted a witness to take the stand solely for the purpose of having the jury hear him invoke his fifth amendment privilege against self-incrimination. Point (2) is dispositive. However, because of the connection between points (1) and (2), and because both points may otherwise be issues during retrial, both points are addressed. Additional points raised by Auto–Owners are not addressed. The judgment is reversed. The case is remanded for retrial.

In April 1984, Betty Cruce purchased The Folly Restaurant in Lexington, Missouri. Thereafter, Ms. Cruce insured the restaurant with Auto–Owners under two separate policies. Under one policy, the building was insured for $60,000 and the contents were insured for $45,000. Under a second policy, a Lowry organ Ms. Cruse had purchased after she bought the restaurant was insured for $13,500.

On February 10, 1987, fire destroyed The Folly Restaurant and its contents. A fire investigator hired by Auto–Owners concluded the fire was of an incendiary origin and had been intentionally set.

In March 1987, Ms. Cruce filed a sworn proof of loss statement with Auto–Owners. In the statement, Ms. Cruce listed the actual damage and loss to the restaurant and its contents as $280,000, the actual cash value of damage at the time of the fire, and made a claim under the policy for $105,000, the policy coverage limit.

In a letter dated August 6, 1987, Auto–Owners denied Ms. Cruce's claims because the company believed that Ms. Cruse either caused or contributed to cause the February 10, 1987, fire. Ms. Cruce then filed the underlying action to recover under the fire insurance provisions of both policies issued to her by Auto–Owners. In her two-count petition, Ms. Cruce sought $60,000 for the loss of the building and $45,000 for the loss of the contents, plus interest, under the first policy, and $13,500 for the loss of the Lowry organ, plus interest, under the second policy.

The case was tried before a jury, which, on September 20, 1991, returned a verdict in favor of Ms. Cruce on each of her claims against Auto–Owners.[1] On the policy for the contents, the jury awarded Ms. Cruce $45,000 plus "$26,146.00 est. 9% int.," and on the policy covering the organ, the jury awarded her $13,500, together with "$6,285.00 est. 9% int." The trial court accepted the jury's verdicts and entered judgment awarding Ms. Cruce $45,000 plus nine percent interest from April 2, 1987, and $13,000 plus nine percent interest from May 2, 1987. Auto–Owners filed an "Alternative Motion for New Trial and/or Judgment Notwithstanding the Verdict, and/or Remittitur" on October 7, 1991, which the trial court subsequently overruled. Auto–Owners now appeals.

I.

■ Auto–Owners contends as its first point on appeal that the trial court erred in

---

1. Auto–Owners paid the $60,000 in building coverage to the mortgagee of the premises prior to trial.

overruling its motion for new trial because the trial court wrongly admitted "inadmissible and otherwise irrelevant" hearsay evidence by permitting witness Jane Soendker to testify as to the out-of-court statements made by Larry Dean Pointer. Mrs. Soendker, a learning disabilities teacher at the Lexington Middle School, related to the jury two conversations she had with Mr. Pointer when he was her student wherein Mr. Pointer allegedly predicted The Folly Restaurant would burn and later implied that he had "beaten" a polygraph examination administered to him by police officers investigating the fire.

When Mrs. Soendker was called to the stand to testify, counsel for both Ms. Cruce and Auto–Owners immediately approached the bench. During the bench conference out of the hearing of the jury, counsel for Auto–Owners stated that the only testimony Mrs. Soendker could give was hearsay and that he objected to her testimony. The trial court dismissed the jury and held proceedings in chambers. In lengthy discussions on the record, Auto–Owners objected vigorously to any testimony Mrs. Soendker might give regarding the two conversations with Mr. Pointer. Auto–Owners objected on the grounds that the testimony would be inadmissible hearsay and irrelevant. The trial court directed that Mrs. Soendker testify in chambers before any rulings would be made.

Mrs. Soendker was questioned in chambers by both parties. After her testimony and the subsequent argument by both attorneys, the trial court stated that it intended to allow Mrs. Soendker to recount to the jury Mr. Pointer's statements because such testimony was not hearsay. The trial court believed the statements were not offered to prove the truth of the matter asserted and were admissible to prove the state of mind of the declarant, Mr. Pointer. The trial court specifically noted to counsel for Auto–Owners, "[O]bviously, you have made your record on your objection, and you can renew it when and if the witness testifies in court."

The trial court returned the proceedings to open court. Mrs. Soendker was called to the stand and testified before the jury. Through the questions of counsel for Ms. Cruce, Mrs. Soendker related Mr. Pointer's statements which he made during her conversations with him without a single objection by Auto–Owners.

An out-of-court statement offered to prove the truth of the matter asserted is the classic definition of hearsay, and the hearsay rule excludes hearsay testimony absent a recognized exception. *State v. Green*, 575 S.W.2d 211, 212 (Mo.App.1978). The principal objection to hearsay testimony is the inability of an opponent-party to cross-examine the person to whom the hearsay statement is attributed. *Dryden v. Aitken*, 405 S.W.2d 925, 928 (Mo.1966).

Mrs. Jane Soendker's relevant testimony before the jury was as follows:

(Questions by Mr. Hockemeier, counsel for Ms. Cruce).

Q. Now, what do you teach?

A. I teach learning disabilities.

  * * * * * *

Q. All right. Did you ever have a student by the name of Dean Pointer?

A. Yes, I did.

 * * * * * *

Q. Do you remember The Folly fire, The Folly Restaurant fire?

A. I remember being told about it.

Q. All right. And is there a reason that you remember that fire?

A. Yes. Dean told me the day before that The Folly would probably burn. Well—

Q. All right. You wanted to say something different?

A. I think I didn't say that quite like he told it. He said, "Mrs. Soendker, what would you say if I told you that The Folly was going to burn and then it did?" And I said, "That would be quite a coincidence."

 * * * * * *

Q. But then he made this statement to you? And what was the statement?

A. "Mrs. Soendker, what would you say if I told you that The Folly would burn and then it did?"

Q. Did the Folly burn that night?

A. Yes.

Q. Did you have Dean Pointer as a student the next day?

A. Yes, I did.

Q. Did Dean make any statement to you the next day about The Folly?

A. He told me, "Remember what I told you was going to happen? Well, it did. The Folly burned last night."

\* \* \* \* \* \*

Q. All right. Did anyone ever talk to Dean from the authorities?

A. Yes.

Q. And do you remember if that was the sheriff?

A. Lafayette County—no. I think it was the Lexington police.

Q. Did they come and talk to Dean at the school?

A. They talked to him at school.

Q. Did they take him down to the office, the police office?

A. Yes.

Q. Did Dean tell you what happened?

A. That they had given him a lie detector test.

Q. Did he say how he performed?

A. He said he passed it.

Q. Did he say anything else about that test?

A. He said, "You know, there are ways to beat those tests." And I said, "How do you beat a test like that?" And he said, "By taking something before you go."

Mrs. Soendker's testimony recounting Mr. Pointer's prognostication of The Folly Restaurant's fiery doom and his boast that he had "beaten" the police administered polygraph test were offered by Ms. Cruce to prove the truth of the matters asserted. The testimony was offered to prove that Mr. Pointer knew The Folly Restaurant was going to burn and to imply that he caused the fire. Those portions of Mrs. Soendker's testimony were hearsay. No exception to the hearsay rule was offered, and Mr. Pointer's refusal to testify, addressed later, precluded Auto–Owners from cross-examining him. Thus, the prin-ciple for the hearsay exclusion rule, the opponent's inability to cross-examine the person to whom the out-of-court statement is attributed, justifies exclusion here. The offending hearsay testimony was inadmissible and, because of its impact in this case, was prejudicial to Auto–Owners. Whether the objection to Mrs. Soendker's hearsay testimony was adequately preserved need not be addressed because point (2) is dispositive.

### II.

■ In point (2) on appeal, Auto–Owners alleges that the trial court erred in overruling its motion for new trial because it improperly permitted Larry Dean Pointer to take the stand. Auto–Owners asserts that the trial court allowed Mr. Pointer to take the stand "solely for the purpose of having the jury hear him invoke the fifth amendment privilege against self-incrimination."

At the time of the trial, Mr. Pointer was being held at the Lafayette County Jail, awaiting trial on a charge of murder in the first degree. During proceedings in chambers, the trial court and counsel for both parties discussed Ms. Cruce's desire to call Mr. Pointer as a witness in order to question him about his possible role in the fire that destroyed The Folly Restaurant. The trial court and counsel for the parties were advised by Mr. Pointer's attorney that, if called to testify, Mr. Pointer intended to "take the Fifth Amendment in this case on any question beyond what his name is."

Counsel for Auto–Owners strongly objected to Mr. Pointer being called to the stand, contending that the jury would be allowed to draw improper inferences from Mr. Pointer's invocation of the fifth amendment right against self-incrimination. The trial court overruled the objection. Mr. Pointer was called to the stand, and he declined to answer whether he had predicted to Mrs. Soendker the February 10 fire of The Folly Restaurant, invoking his fifth amendment right against self-incrimination. Mr. Pointer was then asked how he was able to predict the fire at The Folly Restaurant. Again Mr. Pointer invoked his fifth amendment right against self-incrimi-

nation and declined to answer the question. Mr. Pointer was then asked if he set fire to The Folly Restaurant. Mr. Pointer refused to answer the question, asserting his fifth amendment right. Finally, Mr. Pointer was asked whether he would refuse to answer every question about The Folly Restaurant, and Mr. Pointer said, "Yes."

■ Whether to permit a witness to testify who claims that he will invoke his right against self-incrimination lies within the sound discretion of the trial court. *State v. Fitzgerald*, 781 S.W.2d 174, 185 (Mo.App. 1989), citing *State v. Loggins*, 698 S.W.2d 915, 918 (Mo.App.1985). "This is a matter which requires the trial court to exercise sound judgment giving due consideration to the facts and circumstances existent at the time the question arises." *Loggins*, 698 S.W.2d at 918.

■ Although *Loggins* was a criminal case, the rule in *Loggins* applies to civil cases. Whether to permit a witness to testify who claims he will invoke his right against self-incrimination lies within the sound discretion of the trial court. However, the rule in criminal cases that "neither party may use the refusal of a witness to testify on self-incrimination grounds for any inference, whether favorable or unfavorable" does not apply in civil cases. "In civil cases, a witness' invocation of his privilege against self-incrimination justifies an inference that, if he had answered the question truthfully, the answer would have been unfavorable to him." *Lappe & Assoc., Inc. v. Palmen*, 811 S.W.2d 468, 471 (Mo.App.1991).

The circumstances regarding whether Mr. Pointer should have been permitted to take the witness stand are considered. Ms. Cruce's attorney and the court were told by Mr. Pointer's attorney that Mr. Pointer would state his name only and refuse to answer any questions about the fire that occurred at The Folly Restaurant if he were called as a witness. Ms. Cruce's attorney wanted the jury to observe Mr. Pointer refuse to answer questions about whether he caused The Folly Restaurant fire and thereby corroborate and supplement Mrs. Soendker's hearsay testimony

about Mr. Pointer's predictions that The Folly Restaurant would burn, further implying that Mr. Pointer started the fire. The resultant inference served to exonerate Ms. Cruce of any involvement in arson and negated any justification in the Auto-Owners' refusal to pay the policy. Thus, Mr. Pointer was not called to elicit his testimony. He was called as a witness by plaintiff Cruce because he would not testify, and defendant Auto-Owners was denied the right to cross-examine Mr. Pointer and to rebut the inference resulting from his refusal to testify. The situation was further exacerbated because apparently Mr. Pointer appeared shackled and in jail attire. Significant, also, are the facts that Mr. Pointer was not a party and claimed no interest in the insurance proceeds. If Mr. Pointer had claimed an interest in the insurance proceeds and had he been a party to the suit, his refusal to testify about relevant events may have been appropriate for the jury to hear.

■ Counsel for Auto-Owners objected to Mr. Pointer being called as a witness before he took the witness stand. Although Ms. Cruce claims that Auto-Owners did not preserve its objection because it did not object when Mr. Pointer actually took the stand to testify, the court and the parties knew that Mr. Pointer would refuse to testify and would invoke his right against self-incrimination when asked any question about The Folly Restaurant. The issue was presented to the trial court outside the hearing of the jury immediately before Mr. Pointer took the witness stand, and the trial court knew all of the facts necessary to determine the issue. When a timely and sufficient objection has been made, a party need not repeat the objection to preserve the point for review. *City of Springfield v. Love*, 721 S.W.2d 208, 214 (Mo.App.1986). For Auto-Owners to have restated the objection when Mr. Pointer took the stand and again after each question was asked would have served no purpose because the parties and the court knew Mr. Pointer would answer no questions except to state his name.

Considering the circumstances pertaining to Mr. Pointer's being called to the witness

stand, the trial court abused its discretion and erred in permitting Ms. Cruce to call Mr. Pointer as a witness for the purpose of asserting his fifth amendment right against self-incrimination and to refuse to testify to Ms. Cruce's attorney's questions.

The judgment is reversed, and the case is remanded for a new trial.

All concur.